1

2

3

4

5

6

7

The  Hon. James L. Robart

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

| | |
|---|---|
| ROSEMARIE TROY and MIKKI COBB, individually, and as class representatives,<br><br>Plaintiffs,<br><br>v.<br><br>KEHE FOOD DISTRIBUTORS, INC.<br><br>Defendant. | No.  C09-0785 JLR<br><br>PLAINTIFFS' COMBINED MOTION FOR COLLECTIVE ACTION CERTIFICATION UNDER 29 U.S.C. § 216 AND CLASS CERTIFICATION UNDER FED. R. CIV. P. 23<br><br>NOTED FOR MOTION CALENDAR: NOVEMBER 5, 2010<br><br>ORAL ARGUMENT REQUESTED |

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

2
## I.   RELIEF REQUESTED

3       Plaintiffs Mikki Cobb and Rosemarie Troy respectfully request that the Court

4 conditionally certify this case as a collective action under the Fair Labor Standards Act

5 ("FLSA"), 29 U.S.C. § 216(b), on behalf of the following similarly situated employees:

6
> All full-time employees of Kehe Food Distributors, Inc. ("Kehe"), at any time
7 > between May 22, 2006 and the date of the order granting this motion, who
> worked as merchandisers and were paid on a salary basis or as sales
8 > representatives and 90% of whose income was derived from servicing
> Albertsons stores.[1]
9
10      Plaintiffs also request that the Court certify the following class under Fed. R. Civ. P.

11 23(b)(3) with respect to claims under the Washington Minimum Wage Act ("MWA"), RCW

12 49.46, and related Washington state labor laws:

13
> All full-time Washington-based employees of Kehe who worked as
14 > merchandisers or sales representatives at any time between May 22, 2006 and
> the date of this motion.

15 Thus, plaintiffs seek: (1) a nationwide collective action pursuant to the FLSA comprised of

16 Kehe sales representatives who focus on Alberstons stores and all Kehe merchandisers

17 regardless of location or stores serviced; and (2) a Rule 23(b)(3) class pursuant to the MWA

18 comprised of all merchandisers and sales representatives employed in Washington state.

19      Finally, plaintiffs request that the Court authorize appropriate notice to be sent to the

20 putative collective and class action members in a form to be agreed to by the parties and/or

21 ordered by the Court.

22

23

---

24 [1] In January 2010, Kehe acquired or merged with another specialty food distributor, Tree of Life. In the
process, the nominal employer of the potential class members may have changed to a different corporate
25 division. The parties have agreed that the potential classes include all merchandisers and sales representatives
who otherwise meet the class definitions and who either were employed by Kehe prior to the merger or who
26 started employment with the new Kehe entity after the merger. The parties are still discussing the status of the
former Tree of Life employees who became employed by the new Kehe entity as a result of the merger.

---

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 1

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## II.   STATEMENT OF FACTS

Kehe Food Distributors, Inc. ("Kehe") is an Illinois-based corporation that distributes ethnic, natural, and other specialty foods to supermarket chains and grocery stores throughout much of the United States.  Ignash Dep. 18:3-24.[2]  Kehe acts as a middleman, buying product from food manufacturers and distributing it to retail stores.

In approximately March 2007, Kehe began servicing Albertsons supermarkets in the Intermountain West and Pacific Northwest region.  Ignash Dep. 20:17-23.[3]  With the possible exception of sales representatives in Utah, Kehe sales representatives who were assigned to Albertsons stores did not service any other customers.  Leannais Dep. 85:4-87:18.

Plaintiff Rosemarie Troy worked as a sales representative and merchandiser for Kehe in Washington state from February 2007 through January 2009.  Troy Dec.  Plaintiff Mikki Cobb worked for Kehe as a sales representative servicing Albertsons stores in western Washington during the same time period.  Cobb Dec.

### A.   Background On Merchandisers.

The primary job duties of merchandisers employed by Kehe are performing new store setups and resets for customers, assisting sales representatives in stocking shelves at customer stores, and covering a sales representative's route when the representative is sick, on vacation, or otherwise unavailable to cover the route.[4]  *See* Exh. 4 (Merchandiser Job

---

[2] Mike Ignash is Kehe's Senior Director of National Accounts and was designated by Kehe as a corporate representative under Fed. R. Civ. P. 30(b)(6).  Kehe also designated Scott Leannais, Senior Vice President of Sales Operations, and Michael DiPiero, Senior Director of Sales for the Mountain Region, as corporate representatives under Rule 30(b)(6).  All cited deposition transcripts and exhibits are appended to the accompanying Declaration of Adam J. Berger.

[3] During the relevant time period, Kehe used the terms "Intermountain West" and "Northwest" interchangeably to refer to Washington, Oregon, Idaho, Montana, Wyoming, Utah, and Colorado.  DiPiero Dep. 13:25-14:3.  However, there were no Albertsons stores serviced by Kehe in Colorado.  *Id.*  41:11-42:15.

[4] A new store setup requires the merchandiser to set up and stock shelves in a newly opened store.  Leannais Dep. 17:1-13.  A reset involves changing the items stocked in a section or sections of an operating store.  Leannais Dep. 27:7-25, 48:7-50:11.

---

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Description); Leannais Dep. 13:1-14:3; Merchandiser Decs.[5]   A job analysis prepared by Kehe states, "A Merchandiser sets up product shelves and stocks loads of specialty food items in client grocery stores."  Exh. 5.  Some experienced merchandisers may also train new sales representatives on the use of the Telxon, a handheld electronic device used by Kehe to place orders and write credits to stores for out-of-date, damaged, or other unsaleable goods that must be removed from the shelves.  Troy Dec.  These job duties are the same for all Kehe merchandisers everywhere in the country.  Leannais Dep. 16:13-17; Merchandiser Decs.

When performing new store setups, resets, or assisting sales representatives in routine stocking (also referred to as "throwing freight"), merchandisers are guided by detailed schematics, or planograms, that describe specifically which products are to be placed where on the shelves and in what quantities.  Leannais Dep. 20:13-20, 32:14-24; Merchandiser Decs.  Merchandisers do not participate in development of these planograms.  Leannais Dep. 20:7-12; Merchandiser Decs.   Merchandisers are not responsible for making sales to customer stores, even when covering routes for sales representatives, Leannais Dep. 59:13-60:8; Merchandiser Decs.

Merchandisers generally do not transport either food products or display materials to customer stores.  Rather, these items are delivered directly to the stores from Kehe or other warehouses.  Infrequently, when a store runs out of an item, merchandisers may get product from a nearby store to replenish the shelves.  On rare occasions, merchandisers may receive small quantities of a food product or shelving or display materials at their homes to deliver to a customer store.

---

[5] The Merchandiser Declarations include those of Dennis Allen, Stan Barker, Eric Bedel, Linda Calderon, Paula Cianfarani, Christopher Dammacco, Duke Davidson, Lesley Gaither, Willard Griffin Jr., Lori Holloway, David Irby, Cindy Madjdi, Doug Miller, John Miller, Edwin Ramby, Keith Sowder, and Rosemarie Troy.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 3

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1   During the time period relevant to this case, Kehe paid virtually all of its

2   merchandisers on a salary basis and classified them as exempt from overtime.  Leannais Dep.

3   58:4-6.[6]  Full-time merchandisers often worked more than 40 hours per week without

4   receiving overtime.  Merchandiser Decs.; Exh. 5 (Functional Job Analysis) (describing hours

5   worked per week as 45-55).

6   **B.      Background On Sales Representatives.**

7   The primary duties of Kehe sales representatives servicing Albertsons stores are

8   stocking store shelves with products distributed by Kehe, ordering new product to replenish

9   the product inventory, checking the shelf inventory to remove out-of-date goods, and rotating

10  the product to maintain the shelf "facings," or presentation.  DiPiero Dep. 53:18-23, 82:21-

11  83:12, 84:9-86:7; Long Dec.; Stevens Dec.; Sales Rep Decs.[7]  They also would do small

12  resets of shelves, which involves stocking new or different items in a particular section.

13  DiPiero Dep. 95:24-97:5; Sales Rep Decs.  The job duties of sales representatives servicing

14  Albertsons stores were the same regardless of the location of the store.  Leannais Dep. 81:13-

15  20; Sale Rep Decs.; *see also* DiPiero Dep. 75:14-76:6 (training similar for sales reps

16  throughout the country).

17  Like merchandisers, sales representatives stocked items according to the detailed

18  schematics or planograms.  Leannais Dep. 109:2-18; Long Dec.; Stevens Dec.; Sales Rep

19  Decs.  Similarly, the products ordered by the sales representatives were dictated by the

20  planograms and the need to replenish the shelves in accordance with the planograms.  *Id.*

21  The planograms were developed by Albertsons and Kehe employees at the regional or

---

[6] Sometime in January, 2010, Kehe started paying certain merchandisers in Texas on an hourly basis in response to a customer's demands.  Leannais Dep. 58:7-22.  Plaintiffs are informed that beginning in July 2010, Kehe began paying all merchandisers on an hourly basis.

[7] The Sales Representative Declarations include those of Linda Calderon, Mikki Cobb and Gary Jones.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 4

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

national account level, not by the Kehe sales representative or Albertsons store managers. *Id.;* DiPiero Dep. 54:2-13.  Any deviations from the planogram in a particular store had to be approved by at least two Albertsons managers above the store manager level before Kehe would implement it.  DiPiero Dep. 62:24-63:12.

Albertsons' purchasing decisions were highly centralized.  Leannais Dep. 154:14-20; Long Dec.; Stevens Dec.  Kehe sales representatives servicing their stores did not have the ability to persuade store managers to purchase new or additional Kehe products that were not on Albertsons' pre-authorized list, and the store managers did not have independent authority to order such products.  DiPiero Dep. 128:12-17; Long Dec.; Stevens Dec.; Sales Rep Decs. At most, the sales representatives occasionally would suggest that a store set up an additional display to carry extra quantities of an existing product in order to meet seasonal customer demand, such as prior to a holiday weekend.  Sales Rep Decs.  This happened infrequently and consumed only a small percentage of the sales representatives' time.  *Id.*

The sales representatives did not have sales quotas and were never required to attempt to get other Albertsons markets or other stores to carry Kehe products.  DiPiero Dep. 97:11-17; Sales Rep Decs.  In fact, Kehe sales representatives could not sign up other stores in the Intermountain West region where it services Albertsons because Kehe did not have a distribution network capable of supplying such customers.  Leannais Dep. 81:23-83:20.[8] Like merchandisers, sales representatives normally did not transport food items or display materials to their stores, but stocked items that were delivered separately to the store on pallets.  Long Dec.; Stevens Dec.; Sales Rep Decs.

---

[8] In 2009, Kehe instituted the Kehe Direct program, under which small stores can order product from Kehe on-line and have it shipped directly to the store without any sales representative or merchandiser involvement. Sales representatives were encouraged to contact potential customers for the program, but little of that activity occurred in the Intermountain West region, in part because of the high costs of shipping goods from Illinois, where Kehe is located, to the western region.  Leannais Dep. 113:13-115:3; DiPiero Dep. 39:12-22, 40:16-19.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 5

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Full-time sales representatives are generally paid on a commission basis, though some started on a salary basis.  Leannais Dep. 205:3-206:15.  Full-time sales representatives routinely worked more than 40 hours per week, but were not paid overtime.  Exh. 6 (Functional Job Analysis) (describing hours worked per week as 50-60); Sales Rep Decs.

Kehe uniformly classified merchandisers and sales representatives as exempt from laws requiring overtime compensation.  During discovery, Kehe asserted these employees were exempt under the outside sales and federal Motor Carrier Act exemptions.  Exh. 7.

### III.   EVIDENCE RELIED UPON

Plaintiffs rely on the pleadings and submissions in the case and the accompanying declarations of Adam J. Berger, Dennis Allen, Stan Barker, Eric Bedel, Linda Calderon, Paula Cianfarani, Mikki Cobb, Christopher Dammacco, Duke Davidson, Lesley Gaither, Willard Griffin Jr., Lori Holloway, David Irby, Gary Jones, Steven Long, Cindy Madjdi, Doug Miller, John Miller, Edwin Ramby, Keith Sowder, Michael Stevens, and Rosemarie Troy, and exhibits thereto.

### IV.   DISCUSSION

**A.     Substantive Background: Outside Sales And Motor Carrier Act Exemptions Under Federal And State Law.**

The principal issue on the merits in this case is whether sales representatives servicing Albertsons stores and merchandisers are exempt from federal and state overtime requirements under the outside sales or federal Motor Carrier Act exemptions.  Although the Court need not and should not attempt to resolve these issues now in the context of this motion for collective and class action certification, the Court's consideration of this motion may be assisted by a brief overview of these two exemptions.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 6

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Both the FLSA and the MWA generally require employees to be paid at time and a half their regular rate of pay for all hours worked over 40 in a week.  29 U.S.C. § 207(a)(1); RCW 49.46.130.  There are limited exceptions to this rule.

One exception is the outside sales exemption, which exempts from overtime requirements, *inter alia*, individuals employed to make sales away from the employer's place of business who are paid on a salary or commission basis.  *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.500; RCW 49.46.010(5)(c); WAC 296-128-540. The FLSA and the MWA contain similar, but not identical outside sales exemptions.  The primary difference between the two is that the FLSA exemption applies only to those whose "primary duty" is making outside sales, 29 C.F.R. § 541.500, while the MWA exemption applies only if the employee is "customarily and regularly engaged" in sales activity and no more than 20% of the employee's time is spent on non-exempt tasks, WAC 296-128-540(1)-(2).

The FLSA also contains an overtime exemption for employees whose hours of service are subject to regulation by the Secretary of Transportation under the federal Motor Carrier Act.  *See* 29 U.S.C. § 213(b)(1).  This exemption encompasses employees of motor carriers and private motor carriers engaged in the transportation of property in interstate commerce.  *See Id*.; 49 U.S.C. § 13501; 49 U.S.C. § 31502. The Washington MWA, however, requires payment of overtime, or the reasonable equivalent of overtime, even for employees of motor carriers.  *See* RCW 49.46.130(2)(f).

**B.      The Court Should Grant Collective Action Certification Under The FLSA Because Plaintiffs Have Produced Substantial Allegations And Evidence That The FLSA Class Members Are Similarly Situated.**

29 U.S.C. § 216(b) allows employees to bring actions for violation of the FLSA on behalf of themselves "and other employees similarly situated."   Determining whether a collective action is appropriate is within the discretion of the district court. *Mooney v.*

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 7

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).

FLSA collective actions are distinct from Rule 23 class actions in at least two ways. First, any similarly situated employee who wishes to participate must opt-in to the case following notice, in contrast to the opt-out procedures under Rule 23.[9] Second, § 216(b) collective actions are not subject to the numerosity, predominance, superiority, or other requirements of Rule 23. *See Morden v. T-Mobile USA, Inc.*, 2006 WL 2620320, *2 (W.D. Wash. Sept. 12, 2006); *Hunter v. Sprint Corp.*, 346 F. Supp.2d 113, 117 (D.D.C. 2004).

Neither the FLSA nor the Ninth Circuit have defined the term "similarly situated" as used in the Act. *Morden, supra,* *2. However, the district courts in this circuit, and the majority of other federal courts, have employed a two-tiered approach to certification involving initial notice to prospective plaintiffs followed by a final evaluation as to whether such plaintiffs are similarly situated. *Id.* Under this approach,

> the Court will conduct an initial "notice stage" analysis of whether plaintiffs are similarly situated, and will determine whether a collective action should be certified for the purpose of sending notice of the action to potential class members. *See, e.g., Thiessen* [*v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.2001)]. For conditional certification at this notice stage, the Court requires little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. The standard for certification at this stage is a lenient one that typically results in certification. *Wynn* [*v. National Broadcasting Co., Inc.*, 234 F.Supp.2d 1067, 1082 (C.D.Cal.2002)].

*Morden*, *supra*, *2.

---

[9] At the present time and before formal notice, a total of 37 putative class members (plus the two plaintiffs) have already filed their consents to participate in this case.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 8

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

"Once notice has been issued, the opt-in period has expired, and discovery has been completed courts often make a second-stage final determination of whether the named plaintiffs are 'similarly situated' to the opt-in parties." *Godfrey v. Chelan County PUD*, 2007 WL 2327582, *3 (E.D. Wash. Aug. 10, 2007) (citing *Hip v. Liberty Nat'l Life Insur. Co.*, 252 F.3d 1208, 1217-18 (11th Cir. 2001)).  Only at this stage, "the Court will utilize a stricter standard for determining whether the conditionally certified plaintiffs are indeed 'similarly situated,'" and will consider such factors as "the specific employment conditions and duties of the individual plaintiffs, any defenses asserted by or available to the defendant which appear to be individual to each plaintiff, [and] fairness and procedural considerations." *Morden*, *supra*, *2; *see also Thiessen*, 267 F.3d at 1102-03.

"In describing the lenient standard used at the first stage, many courts have indicated that a plaintiff must simply show that 'there is some factual basis beyond the mere averments in their complaint for the class allegations.'" *Harris v. Vector Marketing Corp.*, 2010 WL 1998768, *2 (N.D. Cal. May 18, 2010) (citation omitted).  Plaintiffs here easily satisfy this "lenient" standard.  As discussed herein, plaintiffs present substantial evidence, based on documentary evidence as well as sworn testimony from both managers and employees, that all merchandisers employed by Kehe throughout the nation had the same job description, performed similar job duties, and were uniformly classified as exempt from overtime pay by Kehe.  Similarly, all sales representatives employed by Kehe to service Albertsons stores had the same job descriptions, performed similar job duties, worked under the same centralized purchasing regimen, and were uniformly classified as exempt.  This is sufficient to satisfy the requirements of § 216(b) at this stage.  *See Morden, supra*, *3 (conditionally certifying collective action in a misclassification case where all putative class members had "comparable job descriptions," "performed similar job duties," and "were uniformly

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 9

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

classified as exempt"); *Harris, supra,* *5 (granting conditional certification where class of sales representatives "have the same duties" and were "categorically" classified as independent contractors) *Carter v. Anderson Merchandisers LP*, 2010 WL 1946784, *5 (C.D. Cal. May 11, 2010) (granting final collective action certification where all class members had same position as sales representatives, all were classified as exempt, their job duties "are largely defined by comprehensive corporate policies and procedures," and defendant asserted uniform defenses of outside sales and Motor Carrier Act exemptions). Therefore, the Court should grant conditional collective action certification and direct that notice be sent to the putative FLSA class members.

> **C.     The Court Should Grant Class Certification Of The Washington State Law Claims Under Fed. R. Civ. P. 23.**

The Ninth Circuit recently confirmed its long-standing standards for class certification in *Dukes v. Wal-Mart Stores,* 603 F.3d 571 (9th Cir. 2010) (en banc).  At the class certification stage, a district court's factual inquiry is limited in scope.  "A district court must sometimes resolve factual issues related to the merits to properly satisfy itself that Rule 23's requirements are met, but the purpose of the district court's inquiry at this stage remains focused on, for example, common *questions* of law or fact under Rule 23(a)(2), or predominance under Rule 23(b)(3), not the proof of answers to those questions or the likelihood of success on the merits."  *Id*. at 590.  Plaintiffs must provide the Court with sufficient information to assess "class facts," such as numerosity, commonality, typicality, and adequacy of representation.  Conte and Newberg, 3 Newberg on Class Actions § 7.20 (4th ed. 2002) ("Newberg").  However, plaintiffs are entitled to the benefit of common sense assumptions regarding these facts.  *Id*. § 7.19-20.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 10

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1          **1.      The Class Meets the Criteria of Fed. R. Civ. P. 23(a)(1)-(4).**

2          Plaintiffs' proposed Washington state class of merchandisers and sales

3   representatives satisfies each of the elements of Rule 23(a): (1) it is so numerous that joinder

4   of all members is impracticable ("numerosity"); (2) there are questions of law or fact

5   common to the class ("commonality"); (3) the claims of the named plaintiffs are typical of

6   the claims of the class as a whole ("typicality"); and (4) the representative plaintiffs will

7   fairly and adequately protect the interests of the class ("adequacy").

8          **a.      The Class Members Are So Numerous That Joinder Is**

9          **Impracticable.**

10          Rule 23(a)(1) requires a class to be so numerous that joinder is "impracticable,"

11   which "'does not mean impossibility, but only difficulty or inconvenience of joining all

12   members of the class.'" *Ali v. Ashcroft*, 213 F.R.D. 390, 408 (W.D. Wash. 2003) (quoting

13   *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-14(9th Cir. 1964)).  This criterion

14   can be satisfied by sheer numbers alone, and courts have found a presumption of

15   impracticability when the class numbers 40 or more.  *See Pierce v. Novastar*, 238 F.R.D.

16   624, 630 (W.D. Wash 2006) (numerosity satisfied when at least 60 persons in class); *Miller

17   v. Farmer Bros. Co.*, 64 P.3d 49, 53 (Wn. App. 2003) (federal courts have recognized a

18   rebuttable presumption that joinder is impracticable where a class contains at least 40

19   members; the *Miller* class ultimately included 29 potential members).  "Where the sheer size

20   of the proposed class does not establish impracticality, the court should consider other

21   factors, including 'the geographical diversity of class members, the ability of individual

22   claimants to institute separate suits, and whether injunctive or declaratory relief is sought.'"

23   *Kirkpatrick v. Ironwood Communications, Inc.*, 2006 WL 2381797, *3 (W.D. Wash. 2006)

24   (*quoting Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on

25   other grounds by* 459 U.S. 810 (1982)).

26

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 11

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Here, the proposed class includes, at a minimum, between 43 and 54 workers who were employed by Kehe as merchandisers and sales representatives in Washington during the class period.  *See* Berger Dec. ¶ 22, Exhs. 8-9 (Class Lists). These employees are dispersed throughout the state.  As a practical matter, their claims are not large enough to support individual actions, even with the possibility of attorney fee shifting on statutory wage claims. This is especially true for the many class members who only worked for Kehe for a relatively short period of time.  The size of the class and these other factors make joinder impracticable.

### b.       There Are Common Questions Of Law Or Fact.

Fed. R. Civ. P. 23(a)(2) requires at least one question of law or fact common to the class. *Kirkpatrick, supra,* *3 ("courts have held that a single common issue is sufficient to meet the commonality requirement"). This test is "not high."  *Mortimore v. FDIC*, 197 F.R.D. 432, 436 (W.D. Wash. 2000); *accord, Ali*, 213 F.R.D. at 409 ("'commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.").  Here, this test is satisfied by several overarching factual and legal questions common to the class, including:

- whether the duties of merchandisers and sales representatives servicing Albertsons stores fall within the outside sales exemption under WAC 296-128-540(2);

- whether defendant's claimed federal Motor Carrier Act exemption applies to Washington class members' state law claims;

- whether Kehe's failure to pay class members overtime was willful for purposes of exemplary damages under RCW 49.52; and

- whether Rule 23 class members may obtain exemplary damages under RCW 49.52 in addition to liquidated damages as collective action members under the FLSA.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 12

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1    In addition, the class members are bound by common issues of fact, because Kehe has

2    admitted that all merchandisers in Washington state (and, indeed, throughout the country)

3    have the same job duties, as do all sales representatives servicing Albertsons stores in

4    Washington state.   Moreover, except on those few occasions when Washington-based

5    merchandisers were sent to help with store openings or major resets in other states, all

6    proposed class members serviced solely Albertsons stores and therefore would have been

7    subject to the restrictions imposed by Albertsons's centralized purchasing regime.

8

9                    c.       **The Claims Of The Named Plaintiffs Are Typical Of The**
                             **Class.**

10   Typicality exists under Rule 23(a)(3) where the class representatives have "the same

11   or similar injury," the conduct "is not unique" to them, and the representatives will not be

12   "preoccupied with [unique] defenses." *Clark v. Bonded Adjustment Co.*, 204 F.R.D. 662,

13   664-65 (E.D. Wash. 2002).   All that is required is "that the unnamed class members have

14   injuries similar to those of the named plaintiffs and that the injuries result from the same,

15   injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 896 (9th Cir. 2001).

16   "[M]uch like commonality, even if class members are not identically situated, typicality is

17   not defeated if there are legal questions common to all class members."  *Ali*, 213 F.R.D. at

18   409.  Finally, differences in the degree of damages do not undermine a finding of typicality.

19   *In re Visa Check Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001).

20

21   Here, as Kehe admits, the named plaintiffs had job duties typical of the merchandisers

22   and sales representatives in the putative class.  DiPiero Dep. 151:1-152:2.  Like all other

23   class members they were classified as exempt and not paid overtime because of that

24   classification.  They suffered the same injury as other class members for the same reason,

25   and therefore are typical for purposes of Rule 23.

26

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 13

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1         **d.**    **The Named Plaintiffs Will Fairly And Adequately Represent The Interests Of The Class Members.**

2   Adequacy of representation under Fed. R. Civ. P. 23(a)(4) concerns whether the class

3   representatives have "any conflicts of interest with other class members" and will "prosecute

4   the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020

5   (9th Cir. 1998).  Here, the named plaintiffs have no interests conflicting with other class

6   members; they were long time Kehe employees in Washington state and are seeking to

7   enforce basic statutory rights guaranteed to all Washington workers. *See Lerwill v. Inflight*

8   *Motion Pictures, Inc.*, 582 F.2d 507, 512 n.4 (9th Cir. 1978) (doubtful that employees could

9   be deemed to oppose mandated statutory wage and hour rights).  Similarly, the plaintiffs are

10  prepared to prosecute the action vigorously on behalf of the class.  There is nothing in the

11  personal background or situations of either representative that would give rise to a conflict or

12  interfere with vigorous prosecution.  Thus, Rule 23(a)(4) is satisfied.

13        **2.**    **The Proposed Class Meets Fed. R. Civ. P. 23(b)(3) Criteria.**

14  In addition to the Fed. R. Civ. P. 23(a)(1)-(4) prerequisites, the plaintiffs must satisfy

15  at least one of the three Rule 23(b) criteria. *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 416

16  (W.D. Wash. 2003). In this case, the proposed class satisfies the standards and purposes of

17  subsection (b)(3). Under this subsection, a class may be certified when:

18        (3) the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy . . .

19        **a.**    **The Predominance Prong Of Rule 23(b)(3) Is Satisfied Here.**

20  In *Hanlon*, 150 F.3d at 1022, the court quoted 7A Wright, Miller & Kane, Federal

21  Practice & Procedure § 1778 (2d ed. 1986), to explicate the predominance prong of this test:

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 14

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

This language also was relied upon in *Hickey v. City of Seattle*, 236 F.R.D. 659, 666 (W.D. Wash. 2006) (finding predominance and certifying class)  In *Connor v. Automated Accounts*, 202 F.R.D. 265, 271 (E.D. Wash. 2001), the court gave a similar test:

Where an issue is of central importance to the case and common to all class member claims, it can cause class litigation to be appropriate. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996). An issue is central to the case if it is one the resolution of which may dispose of the entire litigation or resolve the issue for subsequent individual trials. *See id.*

The predominant question in this case is whether the job duties of merchandisers and sales representatives servicing Albertsons stores fall within the outside sales exemption of the MWA.  This question, which focuses on application of a single legal standard to a set of job duties that defendant has admitted is the same across the class, is common to all members of the class.  The existence and importance of any individual variations is further minimized by: (1) the fact that all class members in Washington service a single corporate customer (Albertsons) which had centralized purchasing practices; and (2) the limited number of Kehe supervisors and managers who supervised the work of class members during the class period, *see* DiPiero Dep. 16:3-18:15.

Secondary questions, such as the availability of a Motor Carrier Act exemption under Washington wage law and the willfulness of Kehe's failure to pay overtime also are predominant and common to the class.  For example, there is no indication that Kehe made individualized exemption determinations for different class members; therefore, whether its failure to pay overtime was willful can be determined with reference to the class as a whole.

Further, the Washington courts have found that applicability of the outside sales exemption under state law is suitable for class treatment.  In *Farmer Bros.,* 64 P.3d at 56, the

Washington Court of Appeals held that common issues predominated in a case asserting

misclassification of a group of delivery driver-salesmen.

> Although the amount of time each class member spent engaged in sales activity might have varied, the over-riding issue in this case is whether Farmer violated the MWA by classifying delivery drivers as sales agents. That question will be answered by determining whether, under WAC 296-128-540(2), delivery was "incidental" to sales or vice-versa. This is the predominant issue shared by all the members of the class.

> \*\*\*\*

> [T]he plaintiffs satisfied the predominance requirement because documents obtained from the employer defined the class members' general duties as the same, and "whether [the employer] acted improperly in classifying the plaintiffs is the common liability issue that predominates over all other factual and legal issues."

*Id.* (*quoting Scott v. Aetna Servs.*, 210 F.R.D. 261, 267 (D.Conn. 2002)).

Finally, the possibility of individual variation in damages does not destroy predominance. As discussed below, such damages often may be proven on an average basis through representative evidence in wage cases like this one. Formulaic calculation of damages also may be possible using data on the number of cases or pallets delivered to stores serviced by the class members.[10] Most important, the parties have agreed that bifurcation of liability and damages is appropriate in this case. Assuming the Court orders such bifurcation, it is unnecessary to determine the suitability of damages for class treatment at this point, and certification can be decided here without regard to the issue of damages.

### b. The Superiority Prong Of Rule 23(b)(3) Is Satisfied.

The second (b)(3) issue is superiority to other available methods. Under this prong, the court may consider the interest of class members in individually controlling separate

---

[10] Both Mr. DiPiero and Mr. Leannais testified regarding average size of pallets and average time it would take a sales representative to stock a pallet and conduct other routine job duties at a store. Leannais Dep. 181:24-183:14; DiPiero Dep.134:15-25, 143:17-144:9.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 16

P:\175614900\P\Mot Class Cert 20010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1   actions, the extent of any existing litigation, the desireability of concentrating the litigation in

2   this particular forum, and the manageability of the class action.  *See* Fed. R. Civ. P. 23(b)(3).

3           Here, the relatively modest size of the individual claims relative to the litigation

4   resources of the corporate defendant make it unlikely that individual class members would

5   have the interest or the ability to bring individual claims.  *Hansen*, 213 F.R.D. at 417

6   (quoting *Connor*, 202 F.R.D. at 272).  The relatively small damages available also would

7   make it likely that a number of plaintiffs would not bring the matter in individual actions for

8   reasons other than the merits of their claims.  This is particularly so because many of the

9   class members currently work for Kehe and it would take a brave plaintiff to sue his or her

10  current employer individually with the expectation of a relatively minor return.   Not

11  surprisingly, therefore, no other actions are currently pending or have been brought on the

12  class claims in this case.

13          In addition, concentrating the litigation in this forum serves the interests of economy

14  and judicial efficiency.  This is particularly true if litigation of an FLSA collective action is

15  going to proceed in this forum, as plaintiffs have requested.

16          Finally, the class action approach in this case is eminently manageable.  The liability

17  case will be proven principally by representative testimony and the testimony of defendant's

18  own managers.  In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946), the

19  Supreme Court held that employers should not benefit by failing to keep accurate records of

20  hours worked and, therefore, employees can prove liability and damages in unpaid overtime

21  cases based on reasonable approximation.  Following *Mt. Clemens*, wage and hour claims

22  have routinely been proven on a collective basis using representative evidence.  *E.g., Reich v.*

23  *Waldbaum, Inc.*, 833 F.Supp. 1037 (S.D.N.Y. 1993), *aff'd* 52 F.3d 35 (2d Cir. 1995) (off-the-

24  clock work at 20 supermarkets); *Reich v. IBP, Inc.*, 820 F.Supp. 1315, 1318 (D.Kan. 1993),

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 17

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*aff'd* 38 F.3d 1123 (10th Cir. 1994) (liability for 23,580 slaughterhouse workers at 11 plants decided in seven trial days).  "Courts have frequently awarded damages to non-testifying employees based on the representative testimony of a small percentage of employees." *Donovan v. Bel-Loc Diner*, 780 F.2d 1113, 1115-16 (4th Cir. 1985).

In Washington, as well, courts have frequently certified MWA cases as class actions, and plaintiffs' counsel in this case have tried three such cases to verdict on the basis of representative evidence in just the past five years.  *See Stevens v. Brink's Home Security, Inc.*, No. 02-2-32464-9 SEA (King Co. Super. Ct.), *aff'd* 169 P.3d 473 (Wash. 2007) (Exh. 13); *Pellino v. Brink's, Inc.*, No. 07-2-13469-7-SEA (King Co. Super. Ct.) (appeal pending) (Exh. 14); *Anfinson v. Federal Express, Inc.*, No. 04-2-39981-5 SEA (King Co. Super. Ct.) (appeal pending) (Exh. 15).  In *Stevens*, Judge Palmer Robinson instructed the jury on the propriety of proof by representative evidence in an MWA case.  Exh. 12 (*Stevens* Jury Instruction).  In *Pellino*, Judge Michael Trickey affirmed the applicability of the *Mt. Clemens* approach to MWA cases and issued a decision in favor of a 180 member class primarily on the basis of testimony from eight class members.  Exh. 11, pp. 3, 31-32, 36 (*Pellino* Findings & Conclusions); *see also Elliott v. Cadman (Black Diamond) Inc.,* No. 06-2-29743-1, Findings & Conclusions at 6 (King Co. Super. Ct. July 20, 2009) (citing *Mt. Clemens* in MWA case) (Exh. 10).

Several considerations support the use of representative evidence as an appropriate and manageable approach to the class action here.  First, the size of the class is relatively small, with homogenous job duties and circumstances.  Second, the relevant issues – the applicability of the outside sales and Motor Carrier Act exemptions – are more prone to common proof and less subject to individual variation than many other MWA cases that have been successfully certified and managed as class actions, including cases alleging off-the-

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 18

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

clock work compelled or suffered by employers or missed rest and meal break claims.  *E.g.*, *Kirkpatrick*, *supra*.

Third, it is clear that the FLSA collective action in this case may proceed on the basis of representative evidence under *Mt. Clemens*.  Thus, judicial economy would be served by trying the claims together on a similar evidentiary basis.

### 3.     The Court May Certify Both An FLSA And Pendent State Law Class Action.

Kehe may argue that the Court cannot certify both an FLSA collective action and Rule 23 class action on plaintiffs' state law claims because there is an alleged inconsistency between the opt-in provisions under the FLSA and the opt-out procedure under Rule 23.  Any such argument would be wrong.

The Ninth Circuit has not ruled on the propriety of such hybrid actions, and other courts have split on the issue.  *See Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 472 (E.D. Cal. 2010).  However, at least three other circuit courts and "[m]any district courts in the Ninth Circuit have allowed an opt-in FLSA collective action and opt-out Rule 23 class action to proceed simultaneously in the same suit."  *Id.* (citing cases); *see also Carter*, *supra*, *1 (in alleged misclassification case, certifying FLSA action including over 300 sale representatives and Rule 23 class on state law claims with 173 members).

As *Murillo* notes, holding that certification of an FLSA class precludes contemporaneous maintenance of an overlapping state-law based Rule 23 class would be inconsistent with the FLSA's saving provision, which states that nothing in the act "'shall excuse noncompliance with any Federal or State law or municipal ordinance establishing [stricter labor laws].'"  *Murillo*, 266 F.R.D. at 472 (quoting 29 U.S.C. § 218(a)).  In *Bamonte v. City of Mesa*, 2007 WL 2022011, *4 (D. Ariz. July 10,  2007), the court also explains that 28 U.S.C. § 1367 provides no basis for the district courts to decline supplemental jurisdiction

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 19

P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

over contemporaneous state-law based class actions simply because Congress chose to require employees to opt-in to the FSLA claims in a hybrid case.

Finally, the concerns that have led some courts to reject supplemental Rule 23 classes in hybrid cases are not present here.  This is not a case where the supplemental state law class would substantially predominate over the FLSA claims.  *See Bamonte*, *supra*, \*3.  Rather, the potential nationwide FLSA class is significantly larger than the Washington state class and the number of joinders that have already been filed -- even before certification and notice – demonstrates the interest of the FLSA class members in participating.  In addition, there is a significant overlap of factual and legal issues with respect to the claims and defenses under both the FLSA and the Washington MWA, making it efficient to try these claims together.  At the same time, the state law is not completely coextensive with the FLSA; the scope of the outside sales exemption under the MWA is arguably narrower than that under the FLSA, while Kehe's Motor Carrier Act defense applies only to the FLSA.  Thus, this is not a case where plaintiffs seek an "end-run" around the FLSA's opt-in requirements through use of a hybrid action.  Rather, the Rule 23 class here is properly employed to protect the interests of a relatively small subset of the larger group under state laws that are more favorable to their rights to receive overtime compensation.

## V.   CONCLUSION

For the reasons stated above, the Court should grant conditional certification of an FLSA collective action and certification of an MWA class action, and direct that appropriate notice be sent to the potential class members.

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 20
P:\175614900\P\Mot Class Cert 92010.doc

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

2
DATED this 20th day of September, 2010.

3
                               *s/ Adam J. Berger*

4
                               MARTIN S. GARFINKEL, WSBA #20787
ADAM J. BERGER, WSBA #20714

5
                               Counsel for Plaintiffs

6
                               **SCHROETER, GOLDMARK & BENDER**
810 Third Avenue, Suite 500

7
                               Seattle, WA  98104
Phone:  (206) 622-8000

8
                               Fax:  (206) 682-2305
Email:   garfinkel@sgb-law.com

9
                                                 berger@sgb-law.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 21

P:\175614900\P\Mot Class Cert 92010.doc

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on September 20, 2010, I electronically filed the foregoing

3    motion together with its supporting pleadings and attachments thereto, with the Clerk of the

4    Court using the CM/ECF system which will send notification of such filing to the following:

5

6    Jeffrey A. Hollingsworth
     Chelsea D. Peterson
7    Bruce M. Cross
     Perkins Coie LLP
8    1201 Third Avenue, Suite 4800
     Seattle, WA 98101-3099
9    Telephone: (206) 359-8000
     Fax: (206) 359-9000
10   E-Mail: JHollingsworth@perkinscoie.com
     E-Mail: CDPetersen@perkinscoie.com
11   E-MAIL: BCross@perkinscoie.com

12

13         DATED at Seattle, Washington this 20th day of September, 2010.

14

15                                        s/Adam J. Berger
                                          ADAM J. BERGER, WSBA #20714
16                                        SCHROETER, GOLDMARK & BENDER
                                          810 – 3rd Avenue, Ste. 500
17                                        Seattle, WA  98104
                                          (206) 622-8000
18                                        berger@sgb-law.com
                                          Counsel for Plaintiffs
19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR COLLECTIVE
AND CLASS ACTION CERTIFICATION - 22
P:\175614900\P\Mot Class Cert 92010.doc