1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 10 ROSEMARIE TROY, et al., | CASE NO. C09-0785JLR |
| 11 Plaintiffs, | ORDER GRANTING PLAINTIFFS' COMBINED |
| 12 v. | MOTION FOR COLLECTIVE ACTION CERTIFICATION AND |
| 13 KEHE FOOD DISTRIBUTORS, INC., | CLASS CERTIFICATION |
| 14 Defendant. | |

15      This matter comes before the court on Plaintiffs Rosemarie Troy and Mikki

16 Cobb's combined motion for (1) certification of a nationwide collective action pursuant

17 to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and (2) class certification

18 pursuant to Federal Rule of Civil Procedure 23 of claims brought under the Washington

19 Minimum Wage Act ("MWA"), chapter 49.46 RCW, and related Washington state labor

20 laws (Dkt. # 62).  Defendant Kehe Food Distributors, Inc. ("Kehe") filed a response to

21 Plaintiffs' motion (Dkt. # 94), and Plaintiffs filed a reply in support of their motion (Dkt.

22 # 114).  With leave of the court, both parties filed supplemental briefs.  (Pls. Supp. Br.

ORDER- 1

1   (Dkt. # 138); Defs. Supp. Br. (Dkt. # 139).)  The court heard oral argument on September

2   16, 2011.  (*See* Dkt. # 140.)  Having considered the submissions of the parties, the record,

3   and the relevant law, and having heard the argument of counsel, the court GRANTS

4   Plaintiffs' combined motion for collective action certification and class certification (Dkt.

5   # 62).

6                               **I.   BACKGROUND**

7        Kehe is an Illinois-based corporation that distributes specialty, ethnic, and natural

8   foods to supermarket chains and grocery stores throughout the United States.  (Berger

9   Decl. (Dkt. ## 63 (sealed), 90 (redacted)) Ex. 2 ("Ignash Dep."[1] at 18.)  Kehe buys

10  products from food manufacturers and distributes them to retail stores.  In March 2007,

11  Kehe began servicing Albertsons stores in Washington, Oregon, Idaho, Wyoming, and

12  Utah (the "Intermountain Region").  (*Id.* at 20.)

13       Plaintiff Rosemarie Troy worked as a sales representative and merchandiser for

14  Kehe in Washington state from February 2007 through January 2009.  (Troy Decl. (Dkt.

15  # 84).)  Plaintiff Mikki Cobb worked for Kehe as a sales representative servicing

16  Albertsons stores in Washington during the same time period.  (Cobb Decl. (Dkt. # 69).)

17  **A.   Merchandisers**

18       The primary job duties of merchandisers are performing new store setups and

19  resets for customers, assisting sales representatives in stocking shelves at stores, and

20  covering sales representatives' routes when a sales representative is sick, on vacation, or

21  ―――――――――――――――――

22       [1] Mike Ignash, one of Kehe's designated Rule 30(b)(6) witnesses, was Kehe's executive
director of business development during the relevant time period.  (Ignash Dep. at 4.)

1   otherwise absent.  (*See* Berger Decl. Ex. 4 ("Merchandiser Job Description"); *see also*

2   Merchandiser Decls.[2])  A new store setup requires a merchandiser to set up and stock

3   shelves in a new store.  (Berger Decl. Ex. 3 ("Leannais Dep."[3]) at 17; *see also* Troy Decl.

4   ¶ 14.)  A reset involves changing the items stocked in a section or sections of an already

5   operating store.  (Leannais Dep. at 27, 48; *see also* Troy Decl. ¶ 15.)  There may be

6   multiple levels of resets at different times of the year.  (*See* Leannais Dep. at 49.)

7         In addition, merchandisers may assist sales representatives with their duties if a

8   sales representative is ill, on vacation, or is otherwise absent; may train other

9   merchandisers or sales representatives; and may, on occasion, be called to help with large

10   projects in other areas of the country.  (*Id.* at 13-14.)  Scott Leannais, Kehe's vice

11   president of sales during the time period relevant to this motion, testified in his deposition

12   that merchandisers' jobs are the same throughout the United States.  (*Id.* at 16.)

13         Merchandisers are guided by detailed schematics, called planograms, in

14   performing new store setups or resets.  (*Id.* at 20.)  The planogram specifies where

15   products are placed on the shelf, how many items are placed there, and how much space

16   the products take up.  (*Id.* at 20, 32.)  Merchandisers receive the planograms from the

17   stores; they do not participate in developing the planograms.  (*Id.* at 20.)  Merchandisers

18

19
     [2] Plaintiffs submitted declarations from 17 merchandisers in connection with their motion

20  (Dkt. ## 64, 65, 66, 67, 68, 70, 71, 72, 73, 74, 75, 78, 79, 80, 81, 82, 84), and two additional
merchandisers in connection with their reply (Dkt. ## 126, 127).

21     [3] During the period relevant to this case, Scott Leannais was Kehe's senior vice president

22  of sales.  (Leannais Dep. at 4.)  Mr. Leannais is one of Kehe's designated Rule 30(b)(6)
witnesses.

1    do not make sales to customer stores, even when they cover a route for an absent sales

2    representative; rather, merchandisers covering for sales representatives write new orders

3    only to refill store shelves according to the store's planogram.  (Leannais Dep. at 59-60;

4    *see also* Merchandiser Decls.)

5         Merchandisers drive their own personal vehicles to get from store to store to

6    perform their duties.  (Berger Decl. Ex. 5 ("Merchandiser Functional Job Analysis") at

7    7.)  Merchandisers typically work 45-55 hours per week.  (Merchandiser Functional Job

8    Analysis at 1.)  During the relevant time period, merchandisers were typically paid on a

9    salary basis and did not receive commissions.  (Leannais Dep. at 58.)

10   **B.    Sales Representatives**

11        According to Plaintiffs, the primary duties of Kehe sales representatives servicing

12   Albertsons stores are stocking store shelves, ordering new product to replenish product

13   inventory, checking shelf inventory to remove out of date goods, cleaning the shelves,

14   and rotating product to maintain shelf presentations.  (Berger Decl. Ex. 1 ("DiPiero

15   Dep."[4]) at 53, 82-86.)  Kehe, for its part, contends that the Albertsons sales

16   representatives were also engaged in selling products.  (*See* Leannais Decl. (Dkt. # 104) ¶

17   12 & Ex. A ("Sales Representative Job Description").)  The responsibilities of sales

18   representatives at Albertsons stores are the same regardless of where the Albertsons store

19   is located, and have remained the same since Kehe first acquired the Albertsons account

20

21   _____

22        [4] Michael DiPiero, one of Kehe's designated Rule 30(b)(6) witnesses, is senior director of
     sales operations for the Intermountain Region. (DiPiero Dep. at 6.)

ORDER- 4

1   in 2007.  (Leannais Dep. at 81.)  At oral argument, Plaintiffs' counsel clarified that the

2   only Kehe sales representatives in Washington are those who service Albertsons stores.

3         Albertsons centralizes its product ordering and product presentation.  Mr. Leannais

4   stated that 90 percent of purchasing decisions by Albertsons are made at the national

5   account level; only a small number of off-shelf and customer request orders are made at

6   the store level.  (Leannais Dep. at 154.)  Steven E. Long, formerly Kehe's Western

7   Washington area supervisor, also observed that Albertsons' purchasing decisions were

8   centralized and that sales representatives had no ability to sell products because the Kehe

9   account executive and Albertson's buyer made the purchasing decisions at a higher level.

10   (Long Decl. (Dkt. # 77) ¶¶ 5-6; *see also* Stevens Decl. (Dkt. # 83) (containing similar

11   statements by Kehe's supervisor in Eastern Washington).)  Sales representatives for

12   Albertsons stores reorder stock to replenish products and stock levels already set for each

13   store.  (Lennais Dep. at 109; Sales Representative Decls.;[5] Long Decl. ¶ 5.)  In addition,

14   planograms developed at the Albertsons national account level specify how items are

15   stocked and drive the ordering and re-ordering of products.  (Lennais Dep. at 109.)

16   Individual Albertsons store managers and Kehe sales representatives do not have a role in

17   developing the planograms.  (DiPiero Dep. at 54.)  Any deviations from the planogram

18   must be approved by at least two higher-level Albertsons managers before Kehe will

19   implement the change.  (*Id*. at 62-63.)

20

21         [5] Plaintiffs submitted declarations from three sales representatives in connection with

22   their motion (Dkt. ## 67, 69, 76), and from nine additional sales representatives in connection
with their reply (Dkt. ## 118, 119, 120, 121, 122, 123, 124, 125, 127).

1   Sales representatives do not have sales quotas.  (DiPiero Dep. at 97; *see also* Sales
2   Representative Decls.)  In addition, there is no opportunity in the Intermountain Region
3   for a sales representative to identify additional selling opportunities and customers,
4   because Kehe does not have a distribution chain capable of supplying those customers.
5   (Leannais Dep. at 83.)

6   Sales representatives use their own personal vehicles to travel from store to store
7   to service their customers.  (*See* Berger Decl. Ex. 6 ("Sales Rep. Functional Job
8   Analysis") at 4.)  Most sales representatives are paid on commission based on the items
9   stocked at the stores, although some part-time sales representatives have been paid on a
10  salary or fixed-rate basis.  (Leannais Dep. at 205.)  There were no sales representatives in
11  Washington or working on Albertsons accounts (other than in Montana) who were paid
12  other than on a commission basis.  (*Id.* at 206.)  Sales representatives typically work 50 to
13  60 hours per week.  (Sales Rep. Functional Job Analysis at 1.)

14  **II.    ANALYSIS**

15  **A.    Overview of Plaintiffs' claims**

16  Plaintiffs assert that Kehe failed to pay them overtime wages to which they were
17  entitled under the FLSA and the MWA.  Because it is uncontested that Kehe classified its
18  merchandisers and sales representatives as exempt employees and did not pay them
19  overtime, the key issues in this case involve determining whether sales representatives
20  servicing Albertsons stores and merchandisers are exempt from federal and state
21  overtime requirements under the outside sales or federal Motor Carrier Act exemptions.
22  The court need not decide whether the exemptions apply in connection with the instant

1  motion; rather, the issues with respect to the instant motion involve whether the

2  applicability of the exemptions may be resolved on a classwide basis.

3      1.  <u>Federal Overtime Requirements</u>

4      The FLSA generally requires an employer to pay its employees a rate not less than

5  time and a half their regular rate of pay for all hours worked in excess of 40 in one week.

6  29 U.S.C. § 207(a)(1).  Employees, however, may be exempt from overtime requirements

7  under circumstances defined by the FLSA and its implementing regulations.  Two of the

8  possible exemptions are at issue in this case: the "outside sales" exemption and the Motor

9  Carrier Act exemption.

10     First, the FLSA recognizes an "outside sales" exemption, which exempts from

11 overtime requirements those individuals employed "in the capacity of outside salesman."

12 29 U.S.C. § 213(a)(1).  "Outside salesman" is defined by regulation as any employee:

13     (1) Whose primary duty is:

14     (i) making sales within the meaning of section 3(k) of the Act, or

15     (ii) obtaining orders or contracts for services or for the use of facilities for
    which a consideration will be paid by the client or customer; and

16

17     (2) Who is customarily and regularly engaged away from the employer's
    place or places of business in performing such primary duty.

18 29 C.F.R. § 541.500(a).  "Primary duty" is defined to mean "the principal, main, major,

19 or most important duty that the employee performs."  29 C.F.R. § 541.700(a).

20     Determination of an employee's primary duty must be based on all the facts
    in a particular case, with the major emphasis on the character of the

21     employee's job as a whole. Factors to consider when determining the
    primary duty of an employee include, but are not limited to, the relative

22     importance of the exempt duties as compared with other types of duties; the

amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* With respect to determining the primary duty of an outside sales employee, the regulations provide the following guidance:

In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

29 C.F.R. § 541.500(b). Kehe contends that all of its sales representatives qualify for the outside sales exemption and that merchandisers qualify for the exemption when they cover a route for an absent sales representative. At oral argument, Kehe clarified that it does not contend that merchandisers qualify for the outside sales exemption when they act as merchandisers.

Second, the FLSA also recognizes an overtime exemption for employees whose hours of service are subject to regulation by the Secretary of Transportation under the Federal Motor Carrier Act (the "Motor Carrier Act exemption"). 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502. This exemption covers employees of motor carries and private motor carriers engaged in the transportation of property in interstate commerce. *Id.* Kehe contends that both merchandisers and sales representatives are subject to the Motor Carrier Act exemption.

ORDER- 8

2.  <u>Washington State Overtime Requirements</u>

Like the FLSA, the MWA generally requires employees to be paid one and a half times their regular rate of pay for all hours worked over 40 in a week.  RCW 49.46.130(1); RCW 49.46.130(2)(a).  Relevant to this case, the MWA recognizes an "outside sales" exemption to the overtime requirement similar to that of the FLSA.  RCW 49.46.010(5)(c); WAC 296-128-540(1)-(2).  This exemption provides:

The term "individual employed in the capacity of outside salesman" in RCW 49.46.010(5)(c) shall mean any employee:

(1) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business, as well as on the premises (where the employee regulates his own hours and the employer has no control over the total number of hours worked) in the following alternative activities:

(a) In making sales; including any sale, exchange, contract to sell, consignment for sale, shipment for sale or other disposition; or

(b) In obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; or

(c) In demonstrating products or equipment for sale; or

(d) In the sale of services and performance of the service sold when the compensation to the employee is computed on a commission basis; and

(2) Whose hours of work of a nature other than that described in (1)(a), (b), (c) and (d) of this section do not exceed 20 percent of the hours worked in the work week by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work; and

(3) Who is compensated by the employer on a guaranteed salary, commission or fee basis and who is advised of his status as "outside salesman."

ORDER- 9

WAC 296-129-540.  The key difference between the MWA and the FLSA is that the MWA outside sales exemption applies where the employee is "customarily and regularly" engaged in sales activity and no more than 20% of the employee's time is spent on nonexempt tasks, *id.*, while the FLSA outside sales exemption applies where the employee's "primary duty" is making outside sales, 29 C.F.R. § 541.500(a).  Kehe contends that the MWA outside sales exemption applies to sales representatives and to merchandisers during those periods of time when they are covering an absent sales representative's route.  As with the FLSA exemption, Kehe does not contend that the MWA outside sales exemption applies to merchandisers acting as merchandisers.

**B.      Nationwide Collective Action under 29 U.S.C. § 216(b)**

Plaintiffs seek to certify the following collective action pursuant to the FLSA:

> All full-time employees of Kehe Food Distributors, Inc. ("Kehe"), at any time between May 22, 2006 and the date of the order granting this motion, who worked as merchandisers and were paid on a salary basis or as sales representatives and 90% of whose income was derived from servicing Albertsons stores.

(Compl. (Dkt. # 1) ¶ 8.)  In other words, Plaintiffs seek a nationwide collective action comprised of (1) all Kehe sales representatives who focus on servicing Albertsons stores and (2) all Kehe merchandisers regardless of their location or of the stores serviced.  (*See* Mot. at 1.)  Plaintiffs claim that these employees were improperly deprived of overtime pay because they are not exempt from the FLSA's overtime requirements.  Kehe contends that these employees were not entitled to overtime pay because they are exempt under either the FLSA "outside sales" exemption or the Motor Carrier Act exemption.

1        1.   Overview of FLSA Collective Actions

2        Under the FLSA, plaintiffs may institute a collective action on behalf of

3    themselves and "other employees similarly situated" against an employer who violates

4    the FLSA's overtime requirements.  29 U.S.C. § 216(b).  In an FLSA collective action,

5    any similarly situated employee must opt-in to the case following notice, whereas under

6    Federal Rule of Civil Procedure 23, a class member who does not wish to be bound by

7    the judgment must opt out of the case.  *See id.*; Fed. R. Civ. P. 23.  In addition, FLSA

8    collective actions are not subject to the numerosity, commonality, and typicality rules of

9    a class action suit brought under Rule 23.[6]  Rather, the plaintiff need only show that she

10   is "similarly situated" to the other members of the proposed class.  29 U.S.C. § 216(b);

11   *see Morden v. T-Mobile USA, Inc.*, No. C05-2112RSM, 2006 WL 2620320, at *2 (W.D.

12   Wash. Sept. 12, 2006).  There is, however, little circuit law defining "similarly situated."

13   *See Morden*, 2006 WL 2620320, at *2.

14       District courts apply a two-tiered approach to certification of a FLSA collective

15   action.  *See id.* (citing cases).  First, the district court conducts an initial "notice stage"

16   analysis of whether plaintiffs are similarly situated to the proposed class, and determines

17   whether a collective action should be certified for the purpose of sending notice of the

18   action to potential class members.  *Id.* (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267

19   F.3d 1095, 1102 (10th Cir. 2001)).  "For conditional certification at this notice stage, the

20   Court requires little more than substantial allegations, supported by declarations or

21   _____

22       [6] *See infra* Part IV.B.

ORDER- 11

1  discovery, that 'the putative class members were together the victims of a single decision,

2  policy, or plan.'" *Id.* (quoting *Thiessen*, 267 F.3d at 1102).

3      The second stage generally occurs after the completion of discovery. *Id.* During

4  this second stage, the court uses a stricter standard for determining whether the plaintiffs

5  are "similarly situated." *Id.* (citing *Thiessen*, 267 F.3d at 1102). The second-stage

6  analysis, however, is still "considerably less stringent than the requirement of Rule

7  23(b)(3) that common questions predominate." *Grayson v. K Mart Corp.*, 79 F.3d 1086,

8  1096 (11th Cir. 1996). Rather, the court must review "several factors, including the

9  specific employment conditions and duties of the individual plaintiffs, any defenses

10 asserted by or available to the defendant which appear to be individual to each plaintiff,

11 fairness and procedural considerations, and whether the plaintiffs made any required

12 filings before instituting suit." *Morden*, 2006 WL 2620320, at *2 (citing *Thiessen*, 267

13 F.3d at 1103); *see also Morgan v. Family Dollar Stores*, 551 F.3d 1223, 1261-62 (11th

14 Cir. 2008) (applying the *Thiessen* factors). Here, although there has been no first-stage

15 conditional certification, the parties agree that the more stringent second-stage analysis is

16 appropriate in light of the amount of discovery that was completed before Plaintiffs filed

17 their motion. (*See* Resp. at 13; Reply at 7.)

18      2.  <u>Plaintiffs are "similarly situated" to the proposed class</u>

19      Having reviewed the evidence in the record and the arguments of the parties, the

20 court concludes that Plaintiffs have met their burden to show under a second-stage

21 analysis that they are "similarly situated" to the proposed class members within the

22 meaning of the FLSA.

1          *a.   The specific employment conditions and duties of the plaintiffs*

2          The first consideration in determining whether Plaintiffs are "similarly situated" to

3  the proposed class is whether the Plaintiffs' specific employment conditions and duties

4  are similar to those of the proposed class.  *See Morden*, 2006 WL 2620320, at *2 (citing

5  *Thiessen*, 267 F.3d at 1103).  Here, as discussed above, the testimony of Kehe's own

6  managers demonstrates that all merchandisers have the same or similar job duties; that all

7  sales representatives servicing Albertsons stores have the same or similar job duties; and

8  that Plaintiffs' job duties were typical of the duties of merchandisers and Albertsons sales

9  representatives.  (*See* Leannais Dep. at 16, 81; DiPiero Dep. at 151-52 (agreeing that Ms.

10 Cobb's duties were typical of sales representatives, and Ms. Troy's duties were typical of

11 merchandisers).)  Further, Plaintiffs have put forth evidence that the duties of

12 merchandisers and sales representatives servicing Albertsons substantially overlap:

13 although each job role has responsibilities unique to it, both groups of employees are

14 responsible for "merchandising activities" such as setting up shelves, resetting shelves,

15 and stocking product according to the stores' planograms or schematics.  (*See supra* Part

16 I.)  Further, when merchandisers cover sales representatives' routes, they are responsible

17 for fulfilling largely the same duties as sales representatives.  (*See id.*)  The court

18 therefore concludes that this factor favors a finding that Plaintiffs are similarly situated to

19 the members of the proposed class.

20         *b.   Defenses asserted by or available to the defendant*

21         The second consideration in determining whether Plaintiffs are "similarly

22 situated" to the proposed class is "any defenses asserted by or available to the defendant

ORDER- 13

1    which appear to be individual to each plaintiff."  *Morden*, 2006 WL 2620320, at *2

2    (citing *Thiessen*, 267 F.3d at 1103).  Kehe asserts that members of the proposed class are

3    exempt from overtime under the FLSA's "outside sales" exemption and the Motor

4    Carrier Act exemption and that Plaintiffs are not similarly situated because whether these

5    exemptions apply depends on the individual employee's situation.  The court disagrees.

6           First, with respect to the "outside sales" exemption, the evidence before the court

7    demonstrates that Kehe sales representatives servicing Albertsons' stores work in an

8    environment that is highly controlled at the Albertsons' national level, and where most of

9    each employee's tasks are pre-defined.[7]  (*See, e.g.*, Leannais Dep. at 20, 109, 154.)  The

10   court agrees with Plaintiffs' assertion that resolution of the case will likely turn on

11   whether the various tasks assigned to the class members qualify as exempt or non-

12   exempt, and whether, given these conclusions, the "primary duty" of Albertsons sales

13   representatives and of merchandisers covering routes for sales representatives is making

14   sales.  *See* 29 C.F.R. § 541.500(a) (defining "outside salesman"); 29 C.F.R. § 541.700(a)

15   ("Primary duty" is defined to mean "the principal, main, major, or most important duty

16   that the employee performs.").

17          Second, with respect to the Motor Carrier Act exemption, it is undisputed that all

18   of the purported class members, including Plaintiffs, used their own personal vehicles for

19   transportation.  Thus, whether the Motor Carrier Act exemption applies depends on the

20   legal question of whether a class member who drives only his or her own personal

21

22          [7] As noted above, Kehe concedes that the FLSA's "outside sales" exemption does not
apply to merchandisers when they work as merchandisers.

ORDER- 14

1  vehicle and does not drive a commercial vehicle qualifies for the exemption.  (*See* Pls.

2  Supp. Br. at 4-5 (quoting *Brooks v. Halsted Commc'ns Ltd.*, 620 F. Supp. 2d 192, 199 (D.

3  Mass. 2009) (holding that the majority view is that it would be "absurd" to have "one

4  vehicle over 10,000 pounds . . . vaccinate an employer from the obligation to pay FLSA

5  overtime to the entire body of its drivers.")).)  Class members are thus similarly situated

6  with respect to the Motor Carrier Act exemption.  The court therefore concludes that this

7  factor, too, favors a finding that Plaintiffs are similarly situated to the proposed class

8  members.

9          c.   *Fairness and procedural considerations*

10         The third consideration is "fairness and procedural considerations."  *Morden*, 2006

11  WL 2620320, at *2 (citing *Thiessen*, 267 F.3d at 1103).  Plaintiffs argue convincingly

12  that certifying the FLSA collective action would reduce the burden on the members of the

13  class by pooling their resources and would efficiently resolve common issues of law and

14  fact that arose from the allegedly illegal conduct.  (Reply at 15 (citing *Morgan v. Family*

15  *Dollar Stores*, 551 F.3d 1223, 1265 (11th Cir. 2008).)  Defendants make no argument

16  that a collective action would be unfair.  The court therefore concludes that this factor,

17  too, favors a finding that Plaintiffs are similarly situated to the members of the proposed

18  class.

19         d.   Dukes *does not affect this result*

20         In its supplemental brief, Kehe argues that the principles set forth in *Wal-Mart Co.*

21  *v. Dukes*, --- U.S. ---, 131 S. Ct. 2541 (2011) preclude going forward with this case as a

22  collective action.  (*See* Defs. Supp. Br. at 6.)  The court is not convinced.  First, courts

1    have made clear that the FLSA's "similarly situated" requirement is less demanding than

2    the Rule 23 commonality requirement that was at issue in *Dukes*.  *See Grayson*, 79 F.3d

3    at 1096.  Further, in the cases cited by Kehe in which district courts relied on *Dukes* to

4    deny collective action certification, the individualized, discretionary decisions of

5    individual supervisors were at issue.  *See, e.g., MacGregor v. Farmers Ins. Exch.*, 2011

6    WL 2981466, at *3-4 (D.S.C. July 22, 2011) (discussing the plaintiffs' reliance on an

7    "unwritten policy" regarding lunch breaks, and concluding that inquiries into individual

8    supervisor decisions regarding each employee's requested, approved, and refused hours

9    rendered the case inappropriate for collective treatment).  Here, no such inquiry into

10   individual supervisors' discretionary decisions is required.  *Dukes* therefore does not

11   support Kehe's argument for denying the motion for collective action certification.

12          In sum, because the *Thiessen* factors support the finding that Plaintiffs are

13   similarly situated to the members of the proposed class within the meaning of 29 U.S.C. §

14   216(b), the court grants Plaintiffs' motion for certification of an FLSA collective action.

15   **C.     Washington Class Action under the MWA**

16          Plaintiffs seek to certify the following class to pursue their MWA claim:

17          All full-time Washington-based employees of Kehe who worked as
            merchandisers or sales representatives at any time between May 22, 2006
18          and the date of this motion.

19   (Compl. ¶ 11.)  Plaintiffs clarified at oral argument that during the operative time period,

20   no Washington-based sales representatives serviced stores other than Albertsons.

21          A district court may certify a class only if: "(1) the class is so numerous that

22   joinder of all members is impracticable; (2) there are questions of law or fact common to

ORDER- 16

1  the class; (3) the claims or defenses of the representative parties are typical of the claims

2  or defenses of the class; and (4) the representative parties will fairly and adequately

3  protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Rodriguez v. Hayes*, 591

4  F.3d 1105, 1122 (9th Cir. 2010).  Certification is proper "only if 'the trial court is

5  satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been

6  satisfied.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

7  147, 161 (1982)).

8      In addition to meeting the Rule 23(a) criteria, the party seeking certification must

9  also fall into one of three categories in Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*,

10  253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).  Here,

11  Plaintiffs seek class certification under Rule 23(b)(3) on the basis that "common

12  questions of law or fact common to class members predominate over individual questions

13  affecting only individual members, and . . . a class action is superior to other available

14  methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

15      "A party seeking class certification must affirmatively demonstrate his compliance

16  with [Rule 23]—that is, he must be prepared to prove that there are in fact sufficiently

17  numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

18  "[S]ometimes it may be necessary for the court to probe behind the pleadings before

19  coming to rest on the certification question." *Id.* (quoting *Falcon*, 457 U.S. at 160).

20  "'The class determination generally involves considerations that are enmeshed in the

21  factual and legal issues comprising the plaintiff's cause of action.'" *Id.* (quoting *Falcon*,

22  457 U.S. at 160).  If a court is not fully satisfied that the requirements of Rules 23(a) and

ORDER- 17

(b) have been met, certification should be refused.  *Falcon*, 457 U.S. at 161.  Even if the

Rule 23 criteria are met, the court is given discretion over whether to certify a class.

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

  1. <u>Rule 23(a) Requirements</u>

   a. *Numerosity*

Rule 23(a)(1) requires the court to find that the class is "so numerous that joinder

of all of its members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity

requirement is not tied to any fixed numerical threshold; rather, it "requires examination

of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of

the Nw., Inc. v. EEOC,* 446 U.S. 318, 330 (1980) (citing cases).  *See Leyva v. Buley*, 125

F.R.D. 512, 516 (E.D. Wash. 1989) (joinder of 50 individual migrant workers as

plaintiffs "would be extremely burdensome, especially in light of their alleged lack of

sophistication, limited knowledge of the American legal system, limited or non-existent

English skills, and geographic dispersion" throughout Washington, California, New

York, and Mexico).

  Plaintiffs contend that the proposed class contains, at a minimum, between 43 and

54 workers who were employed by Kehe as merchandisers and sales representatives in

Washington during the class period.  (*See* Berger Decl. ¶ 22 & Exs. 8-9 (class lists).)

They further contend that joinder of all of the proposed class members would be

impracticable due to the relatively small size of each individual's claims and the fact that

the employees are dispersed throughout the state.  Kehe counters that numerosity is not

met because the proposed class combines two distinct types of employees (merchandisers

1   and sales representatives) into a single "manufactured" class.  Kehe argues that there

2   should more properly a separate class for each type of employee, and that a merchandiser

3   class would not satisfy numerosity because only 10 merchandisers other than Ms. Troy

4   would satisfy the more limited merchandiser class definition.  (*See* Berger Decl. Exs. 8-

5   9.)  In response, Plaintiffs assert, as they did in their argument regarding FLSA

6   certification, that the duties of merchandisers and sales representatives are interrelated

7   and overlapping.

8       Based on Plaintiffs' evidence that the duties of merchandisers and Albertsons sales

9   representatives are interrelated and overlapping (*see supra* Part I & Part II(B)(2)(a)), the

10  court is satisfied that the two positions may be combined into a single class.

11  Accordingly, Plaintiffs have met their burden to demonstrate numerosity.

12          *b.  Commonality*

13      Rule 23(a)(2) requires the court to find that "there are questions of law or fact

14  common to the class."  Fed. R. Civ. P 23(a)(2).  The Supreme Court has clarified that

15  commonality requires the plaintiff to demonstrate that the class members 'have suffered

16  the same injury.'"  *Dukes*, 131 S. Ct. at 2551.  The class members' "claims must depend

17  upon a common contention . . . .  That common contention, moreover, must be of such a

18  nature that it is capable of classwide resolution—which means that determination of its

19  truth or falsity will resolve an issue that is central to the validity of each one of the claims

20  in one stroke."  *Id.*

21      What matters to class certification . . . is not the raising of common
        "questions"—even in droves—but, rather the capacity of a classwide

22      proceeding to generate common answers apt to drive the resolution of the

ORDER- 19

1   litigation.   Dissimilarities within the proposed class are what have the
    potential to impede the generation of common answers.

2   *Id.* (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84

3   N.Y.U. L. Rev. 97, 131-32 (2009)).

4        In their complaint and in their briefing, Plaintiffs have identified a number of

5   factual and legal questions that are common to the class, including:

6
7   • whether the tasks that performed by Washington sales representatives and by
      merchandisers when covering a sales representative's route constitute "making
8     sales" within the meaning of WAC 296-129-540;

9   • whether the duties of merchandisers and of sales representatives servicing
      Albertsons stores fall within the outside sales exemption under WAC 296-128-
10    540(2);

11  • whether Kehe's failure to pay class members overtime was willful for purposes
      of exemplary damages under the MWA;

12  • whether Rule 23 class members may obtain exemplary damages under the
      MWA in addition to liquidated damages as collective action members under
13    the FLSA; and

14  • whether the MWA applies to hours worked by Washington merchandisers and
      sales representatives in other states.
15

16  Plaintiffs also point out all of the class members complain of the same injury—

17  deprivation of overtime pay—and that Kehe has admitted that all merchandisers in

18  Washington state have the same job duties, as do all sales representatives servicing

19  Albertsons stores in Washington state.  (*See* Mot. at 13; Leannais Dep. at 16, 81.)

20       The court concludes that Plaintiffs have met their burden to demonstrate

21  commonality.  First, with respect to the first two questions listed above, Plaintiffs have

22  put forth evidence in the form of testimony from Kehe's Rule 30(b)(6) deponents that the

ORDER- 20

1   duties of all merchandisers within the state of Washington and all sales representatives

2   servicing Albertsons stores are substantially the same, and that Kehe's job descriptions

3   for the positions accurately describe the duties of merchandisers and sales

4   representatives.  (*See* Leannais Dep. at 16, 81; Leannais Decl. ¶ 7.)  Thus, the questions

5   of whether the tasks assigned to these employees constitute "making sales," whether

6   these employees are "customarily and regularly" engaged in sales activity, and whether

7   less than 20% of the employees' time is spent on nonexempt tasks may be subject to

8   common resolution based on the testimony of Kehe managers and the documents in the

9   record.  *See* WAC 296-129-540; *see also Miller v. Farmer Bros. Co.*, 150 P.3d 598, 602-

10  03 (Wash. Ct. App. 2007) (holding that "making sales" within the meaning of the

11  MWA's outside sales exemption "involves creating the sale—that is, persuading a

12  customer to buy a product he has not already consented to buy," and that restocking

13  prearranged quantities of product does not qualify as "making sales").  As Plaintiffs point

14  out, Kehe has thus far directed the court to no evidence showing that any Washington

15  merchandiser or sales representative has qualified for the MWA's outside sales

16  exemption.

17         With respect to the third question, the Washington Supreme Court has held that

18  whether a failure to pay overtime was willful depends on a determination that the

19  employer "knows what he is doing, intends to do what he is doing, and is a free agent."

20  *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371 (Wash. 1998).  The resolution of this

21  question does not require an individualized inquiry into each employee's situation.

22  Rather, whether Kehe knew that it did not pay overtime to its sales representatives and

1   merchandisers and whether it intended not to pay overtime may be subject to resolution

2   on a classwide basis.  Similarly, Plaintiffs' fourth question, whether Plaintiffs may obtain

3   exemplary damages for willful withholding of wages under chapter 49.52 RCW in

4   addition to liquidated damages under the FLSA collective action, is a legal question

5   subject to a common classwide answer.

6          Finally, Kehe raises the question whether the MWA applies to hours worked

7   outside of Washington.  Kehe argues that application of the MWA to time worked by

8   merchandisers outside of Washington would impose an excessive burden on interstate

9   commerce in violation of the Commerce Clause of the United States Constitution.  This is

10  also a question of law subject to common resolution across the class:  the court must

11  decide only once whether the application of the MWA to time worked outside of

12  Washington does or does not violate the Commerce Clause.

13         Further, the court agrees with Plaintiffs that the *Dukes* case does not affect the

14  outcome here.  The Supreme Court's holding that the *Dukes* plaintiffs did not satisfy

15  commonality was based on its determination that the resolution of the employment

16  discrimination claims depended on "literally millions of employment decisions at

17  once"—decisions that had been entrusted to the discretion of the employees' supervisors.

18  *See Dukes*, 131 S. Ct. at 2552.  Thus, the trial court would have been required to review

19  the subjective intent behind those millions of employment decisions in order to determine

20  whether there was gender-based discrimination against the members of the class.  *Id.*

21  Here, by contrast, the issue is whether Washington employees working as merchandisers

22  or as sales representatives were properly classified as exempt under the MWA.

ORDER- 22

1   Discretionary decisions by individual supervisors are not at issue, and it appears that no

2   employee-by-employee analysis of the reasons for Kehe's classification of its employees

3   is necessary to resolve this question.  For these reasons, the court concludes that Plaintiffs

4   have met their burden to demonstrate that there are there are questions of law or fact

5   common to the class as required by Rule 23(a)(2).

6            *c. Typicality*

7            Typicality is satisfied if "the claims or defenses of the representative parties are

8   typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of

9   the typicality requirement is to assure that the interest of the named representative aligns

10  with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

11  Cir. 1992).  "The test of typicality is whether other members have the same or similar

12  injury, whether the action is based on conduct which is not unique to the named

13  plaintiffs, and whether other class members have been injured by the same course of

14  conduct."  *Id.* (internal quotation marks omitted).  Individual defenses applicable to the

15  proposed class representative do not preclude a finding of typicality unless there is a

16  danger that absent class members will suffer if their representative is preoccupied with

17  defenses unique to it.  *Id.*

18           Plaintiffs contend that they satisfy typicality because Kehe has admitted that the

19  named plaintiffs had job duties and claims that were typical of the merchandisers and

20  sales representatives in the putative class.  (*See* Mot. at 13 (citing DiPiero Dep. at 151-

21  52.)  Plaintiffs further contend that they suffered the same injury as all other class

22  members because it is undisputed that, like all other proposed class members, they were

ORDER- 23

1    classified as exempt and not paid overtime.  (*Id*.)  The court agrees that Plaintiffs have

2    satisfied their burden to show that their claims and injuries are typical of the class they

3    seek to represent.

4          Kehe relies primarily on credibility issues in challenging Plaintiffs' typicality.

5    First, Kehe points to a sworn statement made by Ms. Cobb in a workers' compensation

6    proceeding in which she stated that she worked eight hours per day, five days per week.

7    (Hollingsworth Decl. (Dkt. # 101) Ex. D ("Cobb Dep.") at 25-27 & Ex. 4.)  Thus,

8    according to Kehe, Ms. Cobb has sworn under oath that she did not work overtime, and

9    she therefore lacks standing to act as class representative because she did not suffer the

10   injury—deprivation of overtime pay— for which she seeks to represent the putative class.

11   Further, according to Kehe, because Ms. Cobb's later statements contradict her sworn

12   statement, individual credibility problems arise which render her "atypical."  (Cobb Dep.

13   21-22 (stating she worked 14-16 hour days early in her employment and could not

14   estimate the number of hours she typically worked thereafter).)  To counter Kehe's

15   argument, Ms. Cobb submitted a declaration in which she explains the context for her

16   statement that she worked eight hours per day, five days per week.  (2d Cobb Decl. (Dkt.

17   # 116) ¶¶ 3-5.)  Specifically, Ms. Cobb states that she wrote the statement to indicate that

18   she was a full-time employee, because she believed that whether she worked full time

19   was the necessary information in the context of a worker's compensation claim, rather

20   than the actual hours worked.  (*See id.*)  The court concludes, in light of Ms. Cobb's

21   declaration, that Ms. Cobb's worker's compensation statement and deposition testimony

22

ORDER- 24

1 | are not so contradictory as to raise issues regarding standing and credibility that would

2 | make Ms. Cobb atypical of the proposed class.

3 |      Similarly, Kehe contends that credibility issues defeat a finding that Ms. Troy is

4 | typical of the class because Ms. Troy once stated that the job of a sales representative is

5 | to "sell, sell, sell" but later testified that she never sold products and that her job was to

6 | stock store shelves and order new products.  (Resp. at 25 (citing Hollingsworth Decl. Ex.

7 | B).)  Ms. Troy explains that she made the "sell, sell, sell" statement on a self-evaluation

8 | that she wrote in 2008 when she was promoting herself for a supervisory or lead position,

9 | and that she was emphasizing prior sales experiences she had gained in working for other

10 | food distributors.  (2d Troy Decl. (Dkt. # 117) ¶¶ 4-8.)  The court concludes, in light of

11 | Ms. Troy's declaration, that the 2008 self-evaluation statement does not raise credibility

12 | issues that would make her atypical of the proposed class.

13 |      *d.  Adequacy*

14 |      Rule 23(a)(4) requires Plaintiffs to demonstrate that they will fairly and adequately

15 | protect the interests of their class.  Fed. R. Civ. P. 23(a)(4).  In determining whether

16 | Plaintiffs will be adequate class representatives, the court must consider whether they

17 | have "any conflicts of interest with other class members" and whether they will

18 | "prosecute the action vigorously on behalf of the class."  *Hanlon*, 150 F.3d at 1020.

19 |      Plaintiffs argue that they have no interests that conflict with other class members,

20 | that they seek to enforce statutory rights guaranteed to all class members, that they will

21 | prosecute the action vigorously on behalf of the class, and that there is nothing in their

22 | backgrounds that will interfere with their ability to prosecute the case.  (*See* Mot. at 14.)

1  Kehe raises no challenges to Plaintiffs' adequacy, other than the potential credibility

2  issues addressed in the typicality discussion above.  The court concludes that Ms. Troy

3  and Ms. Cobb are adequate class representatives.

4         Neither party expressly addresses adequacy of counsel in its briefing.  Plaintiffs

5  did, however, submit a declaration setting forth their attorneys' qualifications, including

6  their experience with similar class actions and collective actions.  (*See* Berger Decl (Dkt.

7  # 90) ¶¶ 1-5.)  Kehe does not challenge counsel's adequacy.  The court concludes that

8  Mr. Berger and Mr. Garfinkel are adequate and qualified to represent the class in this

9  matter.

10        In sum, the court concludes that Plaintiffs have met their burden to demonstrate

11  that they have satisfied the numerosity, commonality, typicality, and adequacy

12  requirements of Rule 23(a).

13        2.  Rule 23(b)(3) Requirements

14        Under Rule 23(b)(3), a court may certify a class if Rule 23(a) is satisfied and if

15  "the court finds that the questions of law or fact common to class members predominate

16  over any questions affecting only individual members, and that a class action is superior

17  to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

18  R. Civ. P. 23(b)(3).  Both the predominance and superiority requirements were added to

19  the Federal Rules "to cover cases 'in which a class action would achieve economies of

20  time, effort, and expense, and promote . . . uniformity of decision as to persons similarly

21  situated, without sacrificing procedural fairness or bringing about other undesirable

22  results.'"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R.

1    Civ. P. 23(b)(3), Adv. Comm. Notes to 1966 Amendment).  The predominance and

2    superiority requirements are "far more demanding" than Rule 23(a)(2)'s commonality

3    requirement.  *Id.* at 624.

4          a. *Predominance*

5          Predominance "tests whether proposed classes are sufficiently cohesive to warrant

6    adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  "[T]he main concern

7    in the predominance inquiry . . . [is] the balance between individual and common issues."

8    *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 956 (9th Cir. 2009).

9    In the context of a wage-and-hour class action brought under California law, the Ninth

10   Circuit has held that it is an abuse of discretion to rely heavily on an employer's internal

11   policy of treating all employees uniformly with respect to exemptions to the exclusion of

12   other factors relevant to the predominance inquiry.  *Id.* at 959.

13         As discussed above, Plaintiffs have demonstrated that there are multiple common

14   issues that are amenable to classwide determination in this matter.  (*See supra* Part

15   II(C)(1)(b).)  Kehe contends, however, that there remain numerous individualized issues

16   that predominate over the classwide questions, making class certification inappropriate.

17   In particular, Kehe contends that whether the MWA's outside sales exemption applies to

18   an individual full-time sales representative or a merchandiser covering for a sales

19   representative depends on an individualized review of how each employee spends each

20   day.  Plaintiffs disagree, explaining that whether Kehe has met its burden to show that the

21   exemption applies to sales representatives and merchandiser can be determined on a

22   classwide basis. *See Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 587 (Wash.

ORDER- 27

1    2000) (holding that the employer has the burden of proving exempt status).  As discussed

2    above in its discussion of commonality (*see supra* Part II(C)(1)(b)) the court agrees with

3    Plaintiffs that whether the tasks assigned to merchandisers and sales representatives

4    constitute "making sales," whether these employees are "customarily and regularly"

5    engaged in sales activity, and whether less than 20% of the employees' time is spent on

6    nonexempt tasks may be subject to common resolution based on the testimony of Kehe

7    managers and the documents in the record.

8            In addition, Kehe argues in its supplemental brief that *Dukes* "overturns Ninth

9    Circuit precedent by prohibiting certification of class claims that require damages to be

10   calculated by formula."  (Def. Supp. Br. at 7 (citing *Dukes*, 131 S.Ct. at 2561).)

11   Plaintiffs, for their part, rely on the Ninth Circuit's observation, in a post-*Dukes* decision,

12   that "the mere fact that there might be differences in damage calculations is not sufficient

13   to defeat class certification" and that "[t]he amount of damages is invariably an

14   individual question and does not defeat class action treatment."  *Stearns v. Ticketmaster*,

15   --- F.3d ---, 2011 WL 3659354, at *10 (9th Cir. Aug. 22, 2011) (citing *Yokoyama*, 594

16   F.3d at 1094).

17           The discussion in *Dukes* upon which Kehe relies is not on point.  Rather, the cited

18   pages deal with the propriety of certifying a class pursuant to Rule 23(b)(2) where the

19   class seeks backpay as a remedy for discrimination under Title VII.  *See Dukes*, 131 U.S.

20   at 2557-61.  Noting that Rule 23(b)(2) "applies only when a single injunction or

21   declaratory judgment would provide relief to each member of the class," the Court stated

22   that the rule "does not authorize class certification when each class member would be

ORDER- 28

1    entitled to an individualized award of monetary damages." *Id.* at 2557.  The Court

2    explained that this is so because the "procedural protections attending the (b)(3) class—

3    predominance, superiority, mandatory notice, and the right to opt-out—are missing from

4    (b)(2)" because predominance and superiority are "self-evident" when a class seeks an

5    "indivisible injunction benefiting all its members at once." *Id.* at 2558.  In contrast,

6    according to the Court, predominance and superiority are not self-evident with respect to

7    each class member's claim for money, and "depriving people of the right to sue" by

8    approving a mandatory class absent notice and opt-out rights would violate due process.

9    *Id*. at 2559.  The plaintiffs in *Dukes* argued that Rule 23(b)(2) could, nevertheless, allow

10   certification where they sought monetary relief that was "incidental" to the requested

11   injunctive or declaratory relief.  *Id.* at 2560.  The Court, however, disagreed, holding that

12   the plaintiffs could not satisfy the requirements of both Rule 23(b)(2) and due process.

13   *Id.*  Observing that Wal-Mart was "entitled to individualized determinations of each

14   employee's eligibility for backpay," the Court concluded that it was inappropriate to

15   determine the entire class recovery based on a sample of class members.  *Id.* at 2561.

16   Rather, the Supreme Court held that because Wal-Mart is entitled under Title VII's

17   remedial scheme to litigate its statutory defenses to individual claims, such litigation

18   would necessarily prevent backpay from being merely "incidental" to the classwide

19   injunction, and a Rule 23(b)(2) class could not be certified even if "incidental" monetary

20   relief could be awarded to such a class.  *Id*.  Thus, *Dukes* does not, contrary to Kehe's

21   assertion, prevent Plaintiffs from seeking certification of a Rule 23(b)(3) class—as

22

1   opposed to a Rule 23(b)(2) class—where the amount of damages for each class member

2   may depend on an individualized analysis.

3         Nevertheless, even assuming that individualized questions will arise in

4   determining damages for the members of the class, the court concludes that the multiple

5   common questions discussed above—such as whether the MWA exemption applies,

6   whether the MWA applies to hours worked out-of-state, and whether Plaintiffs are

7   entitled to exemplary damages for willful withholding of wages—predominate over the

8   individualized question of damages, which the Ninth Circuit acknowledges is insufficient

9   to defeat class certification. *See Stearns,* 2011 WL 3659354, at \*10.  Further, in

10  conducting this balancing, the court does not rely solely on Kehe's policy of uniformly

11  classifying merchandisers and sales representatives as exempt employees. *See In Wells*

12  *Fargo*, 571 F.3d at 959.  Rather, in light of Kehe's executives' testimony that

13  merchandisers and Albertsons sales representatives' job duties and responsibilities are

14  consistent and subject to centralized control, the court's determination that common

15  issues predominate over individual considerations does not run afoul of *In re Wells Fargo*

16  or *Vinole v. Countrywide Home Loans, Inc.*, 517 F.3d 935, 946 (9th Cir. 2009)

17  (discussing with approval decisions by district courts which "acknowledged the

18  employer's uniform application of an exemption to employees, but focused on whether

19  the employer exercised some level of centralized control in the form of standardized

20  hierarchy, standardized corporate policies and procedures governing employees, uniform

21  training programs, and other factors susceptible to common proof.").  Therefore, the court

22

1    concludes that Plaintiffs have met their burden to satisfy Rule 23(b)(3)'s predominance

2    requirement.

3            b.   *Superiority*

4            Plaintiffs also bear the burden under Rule 23(b)(3) to demonstrate that a class

5    action is superior to other available methods for fairly and efficiently adjudicating the

6    controversy.  Fed. R. Civ. P. 23(b)(3).  First, Plaintiffs argue that a class action is superior

7    due to the relatively modest size of the individual claims, which would make it unlikely

8    that individual class members would bring suit.  Further, Plaintiffs point out that many of

9    the class members still work for Kehe, making it unlikely that they would sue their

10   current employer.  Second, Plaintiffs point out that adjudicating a single action would be

11   much more efficient than burdening the court with approximately 60 individual actions.

12   Third, Plaintiffs explain that the case will be manageable because they will prove liability

13   in this case principally by using representative evidence and the testimony of Kehe's own

14   managers.  Finally, Plaintiffs point to the multiple MWA class actions that Plaintiffs'

15   counsel have tried over the past few years to demonstrate that they are experienced in

16   handling this type of case.  (*See* Mot. at 18.)

17           Kehe counters, first, that the class action is not superior because each class

18   member must litigate "numerous and substantial separate issues to establish his or her

19   right to recover individually."  (Resp. at 28 (quoting *Jimenez v. Domino's Pizza, Inc.*, 238

20   F.R.D. 241, 253 (C.D. Cal. 2006).)  This argument is unavailing.  As discussed above,

21   this case is more appropriately characterized as one involving numerous common,

22   classwide questions that predominate over the individual issues.

ORDER- 31

1    Kehe further argues that a class action is not superior because the Washington

2    State Department of Labor and Industries maintains an administrative process for

3    resolving the overtime claims of individual employees.  As Plaintiffs point out, however,

4    the availability of an administrative process does not foreclose class relief.  The court

5    concludes, therefore, that Plaintiffs have met their burden to demonstrate that a class

6    action is a superior means of resolving the controversy.

7    In sum, because Plaintiffs have met their burdens under both Rule 23(a) and Rule

8    23(b)(3), the court grants Plaintiffs' motion to certify the MWA class pursuant to Rule

9    23.[8]

10              ### III.    CONCLUSION

11   For the foregoing reasons, the court GRANTS Plaintiffs' combined motion for

12   collective action certification and class certification (Dkt. # 62).  The court ORDERS as

13   follows:

14   (1)  The court GRANTS Plaintiffs' motion for certification as a collective action

15   under the FLSA;

16   (2)  The court GRANTS Plaintiffs' motion for class certification of Plaintiffs'

17   state-law claims pursuant to Rule 23(b)(3);

18   _____

19   [8] In a footnote, Kehe questions the propriety of certifying both an FLSA collective action and an MWA class. The Ninth Circuit has not ruled on whether a Rule 23 class action can coexist with a related collective action under the FLSA.  *See Pitts v. Terrible Herbst, Inc.*, ---

20   F.3d ---, 2011 WL 3449473, at *9 (9th Cir. 2011) (acknowledging that district courts in this circuit are divided, but declining to decide the question because the plaintiff had abandoned his FLSA claims).  The only circuit court to address the question, however, has held that the two are

21   compatible.  *See id.* n.6 (noting that the only circuit to address the issue held that "Rule 23 class actions and FLSA collective actions may peacefully co-exist") (citing *Ervin v. OS Rest. Servs.*,

22   632 F.3d 971, 976-79 (7th Cir. 2011)).

1          (3)  The court APPOINTS Adam Berger and Martin Garfinkel of the law firm

2   Schroeter Goldmark and Bender as class counsel; and APPOINTS Plaintiffs Rosemary

3   Troy and Mikki Cobb as class representatives; and

4          (4)  The court ORDERS the parties to contact the court within 10 days of the

5   court's ruling on this motion to schedule a status conference.  Prior to this conference,

6   counsel shall file (1) a proposed form of class notice; and (2) a joint status report

7   containing a proposed case schedule, commencing with dispositive motions.  Further,

8   counsel should be prepared at this conference to discuss their stipulation and proposed

9   order regarding bifurcation of liability and damages issues for trial (Dkt. # 57).

10         Dated this 26th day of September, 2011.

11

12

13   _____

     JAMES L. ROBART
14   United States District Judge

15

16

17

18

19

20

21

22

ORDER- 33