1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

ROSEMARIE TROY, et al.,

11                    Plaintiffs,

12           v.

13   KEHE FOOD DISTRIBUTORS, INC.,

14                    Defendant.

CASE NO. C09-0785JLR

ORDER GRANTING
PLAINTIFFS' COMBINED
MOTION FOR COLLECTIVE
ACTION CERTIFICATION AND
CLASS CERTIFICATION

15      This matter comes before the court on Plaintiffs Rosemarie Troy and Mikki

16   Cobb's combined motion for (1) certification of a nationwide collective action pursuant

17   to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and (2) class certification

18   pursuant to Federal Rule of Civil Procedure 23 of claims brought under the Washington

19   Minimum Wage Act ("MWA"), chapter 49.46 RCW, and related Washington state labor

20   laws (Dkt. # 62).  Defendant Kehe Food Distributors, Inc. ("Kehe") filed a response to

21   Plaintiffs' motion (Dkt. # 94), and Plaintiffs filed a reply in support of their motion (Dkt.

22   # 114).  With leave of the court, both parties filed supplemental briefs.  (Pls. Supp. Br.

(Dkt. # 138); Defs. Supp. Br. (Dkt. # 139).)  The court heard oral argument on September 16, 2011.  (*See* Dkt. # 140.)  Having considered the submissions of the parties, the record, and the relevant law, and having heard the argument of counsel, the court GRANTS Plaintiffs' combined motion for collective action certification and class certification (Dkt. # 62).

## I.    BACKGROUND

Kehe is an Illinois-based corporation that distributes specialty, ethnic, and natural foods to supermarket chains and grocery stores throughout the United States.  (Berger Decl. (Dkt. ## 63 (sealed), 90 (redacted)) Ex. 2 ("Ignash Dep."[1] at 18.)  Kehe buys products from food manufacturers and distributes them to retail stores.  In March 2007, Kehe began servicing Albertsons stores in Washington, Oregon, Idaho, Wyoming, and Utah (the "Intermountain Region").  (*Id.* at 20.)

Plaintiff Rosemarie Troy worked as a sales representative and merchandiser for Kehe in Washington state from February 2007 through January 2009.  (Troy Decl. (Dkt. # 84).)  Plaintiff Mikki Cobb worked for Kehe as a sales representative servicing Albertsons stores in Washington during the same time period.  (Cobb Decl. (Dkt. # 69).)

## A.    Merchandisers

The primary job duties of merchandisers are performing new store setups and resets for customers, assisting sales representatives in stocking shelves at stores, and covering sales representatives' routes when a sales representative is sick, on vacation, or

---

[1] Mike Ignash, one of Kehe's designated Rule 30(b)(6) witnesses, was Kehe's executive director of business development during the relevant time period.  (Ignash Dep. at 4.)

otherwise absent.  (*See* Berger Decl. Ex. 4 ("Merchandiser Job Description"); *see also* Merchandiser Decls.[2])  A new store setup requires a merchandiser to set up and stock shelves in a new store.  (Berger Decl. Ex. 3 ("Leannais Dep."[3]) at 17; *see also* Troy Decl. ¶ 14.)  A reset involves changing the items stocked in a section or sections of an already operating store.  (Leannais Dep. at 27, 48; *see also* Troy Decl. ¶ 15.)  There may be multiple levels of resets at different times of the year.  (*See* Leannais Dep. at 49.)

In addition, merchandisers may assist sales representatives with their duties if a sales representative is ill, on vacation, or is otherwise absent; may train other merchandisers or sales representatives; and may, on occasion, be called to help with large projects in other areas of the country.  (*Id.* at 13-14.)  Scott Leannais, Kehe's vice president of sales during the time period relevant to this motion, testified in his deposition that merchandisers' jobs are the same throughout the United States.  (*Id.* at 16.)

Merchandisers are guided by detailed schematics, called planograms, in performing new store setups or resets.  (*Id.* at 20.)  The planogram specifies where products are placed on the shelf, how many items are placed there, and how much space the products take up.  (*Id.* at 20, 32.)  Merchandisers receive the planograms from the stores; they do not participate in developing the planograms.  (*Id.* at 20.)  Merchandisers

---

[2] Plaintiffs submitted declarations from 17 merchandisers in connection with their motion (Dkt. ## 64, 65, 66, 67, 68, 70, 71, 72, 73, 74, 75, 78, 79, 80, 81, 82, 84), and two additional merchandisers in connection with their reply (Dkt. ## 126, 127).

[3] During the period relevant to this case, Scott Leannais was Kehe's senior vice president of sales.  (Leannais Dep. at 4.)  Mr. Leannais is one of Kehe's designated Rule 30(b)(6) witnesses.

do not make sales to customer stores, even when they cover a route for an absent sales representative; rather, merchandisers covering for sales representatives write new orders only to refill store shelves according to the store's planogram. (Leannais Dep. at 59-60; *see also* Merchandiser Decls.)

Merchandisers drive their own personal vehicles to get from store to store to perform their duties. (Berger Decl. Ex. 5 ("Merchandiser Functional Job Analysis") at 7.) Merchandisers typically work 45-55 hours per week. (Merchandiser Functional Job Analysis at 1.) During the relevant time period, merchandisers were typically paid on a salary basis and did not receive commissions. (Leannais Dep. at 58.)

**B.    Sales Representatives**

According to Plaintiffs, the primary duties of Kehe sales representatives servicing Albertsons stores are stocking store shelves, ordering new product to replenish product inventory, checking shelf inventory to remove out of date goods, cleaning the shelves, and rotating product to maintain shelf presentations. (Berger Decl. Ex. 1 ("DiPiero Dep."[4]) at 53, 82-86.) Kehe, for its part, contends that the Albertsons sales representatives were also engaged in selling products. (*See* Leannais Decl. (Dkt. # 104) ¶ 12 & Ex. A ("Sales Representative Job Description").) The responsibilities of sales representatives at Albertsons stores are the same regardless of where the Albertsons store is located, and have remained the same since Kehe first acquired the Albertsons account

---

[4] Michael DiPiero, one of Kehe's designated Rule 30(b)(6) witnesses, is senior director of sales operations for the Intermountain Region. (DiPiero Dep. at 6.)

in 2007.  (Leannais Dep. at 81.)  At oral argument, Plaintiffs' counsel clarified that the only Kehe sales representatives in Washington are those who service Albertsons stores.

Albertsons centralizes its product ordering and product presentation.  Mr. Leannais stated that 90 percent of purchasing decisions by Albertsons are made at the national account level; only a small number of off-shelf and customer request orders are made at the store level.  (Leannais Dep. at 154.)  Steven E. Long, formerly Kehe's Western Washington area supervisor, also observed that Albertsons' purchasing decisions were centralized and that sales representatives had no ability to sell products because the Kehe account executive and Albertson's buyer made the purchasing decisions at a higher level. (Long Decl. (Dkt. # 77) ¶¶ 5-6; *see also* Stevens Decl. (Dkt. # 83) (containing similar statements by Kehe's supervisor in Eastern Washington).)  Sales representatives for Albertsons stores reorder stock to replenish products and stock levels already set for each store.  (Lennais Dep. at 109; Sales Representative Decls.;[5] Long Decl. ¶ 5.)  In addition, planograms developed at the Albertsons national account level specify how items are stocked and drive the ordering and re-ordering of products.  (Lennais Dep. at 109.) Individual Albertsons store managers and Kehe sales representatives do not have a role in developing the planograms.  (DiPiero Dep. at 54.)  Any deviations from the planogram must be approved by at least two higher-level Albertsons managers before Kehe will implement the change.  (*Id*. at 62-63.)

---

[5] Plaintiffs submitted declarations from three sales representatives in connection with their motion (Dkt. ## 67, 69, 76), and from nine additional sales representatives in connection with their reply (Dkt. ## 118, 119, 120, 121, 122, 123, 124, 125, 127).

Sales representatives do not have sales quotas. (DiPiero Dep. at 97; *see also* Sales Representative Decls.) In addition, there is no opportunity in the Intermountain Region for a sales representative to identify additional selling opportunities and customers, because Kehe does not have a distribution chain capable of supplying those customers. (Leannais Dep. at 83.)

Sales representatives use their own personal vehicles to travel from store to store to service their customers. (*See* Berger Decl. Ex. 6 ("Sales Rep. Functional Job Analysis") at 4.) Most sales representatives are paid on commission based on the items stocked at the stores, although some part-time sales representatives have been paid on a salary or fixed-rate basis. (Leannais Dep. at 205.) There were no sales representatives in Washington or working on Albertsons accounts (other than in Montana) who were paid other than on a commission basis. (*Id.* at 206.) Sales representatives typically work 50 to 60 hours per week. (Sales Rep. Functional Job Analysis at 1.)

## II.   ANALYSIS

### A.   Overview of Plaintiffs' claims

Plaintiffs assert that Kehe failed to pay them overtime wages to which they were entitled under the FLSA and the MWA. Because it is uncontested that Kehe classified its merchandisers and sales representatives as exempt employees and did not pay them overtime, the key issues in this case involve determining whether sales representatives servicing Albertsons stores and merchandisers are exempt from federal and state overtime requirements under the outside sales or federal Motor Carrier Act exemptions. The court need not decide whether the exemptions apply in connection with the instant

motion; rather, the issues with respect to the instant motion involve whether the applicability of the exemptions may be resolved on a classwide basis.

1. Federal Overtime Requirements

The FLSA generally requires an employer to pay its employees a rate not less than time and a half their regular rate of pay for all hours worked in excess of 40 in one week. 29 U.S.C. § 207(a)(1). Employees, however, may be exempt from overtime requirements under circumstances defined by the FLSA and its implementing regulations. Two of the possible exemptions are at issue in this case: the "outside sales" exemption and the Motor Carrier Act exemption.

First, the FLSA recognizes an "outside sales" exemption, which exempts from overtime requirements those individuals employed "in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). "Outside salesman" is defined by regulation as any employee:

(1) Whose primary duty is:

(i) making sales within the meaning of section 3(k) of the Act, or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a). "Primary duty" is defined to mean "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the

amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* With respect to determining the primary duty of an outside sales employee, the regulations provide the following guidance:

In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

29 C.F.R. § 541.500(b). Kehe contends that all of its sales representatives qualify for the outside sales exemption and that merchandisers qualify for the exemption when they cover a route for an absent sales representative. At oral argument, Kehe clarified that it does not contend that merchandisers qualify for the outside sales exemption when they act as merchandisers.

Second, the FLSA also recognizes an overtime exemption for employees whose hours of service are subject to regulation by the Secretary of Transportation under the Federal Motor Carrier Act (the "Motor Carrier Act exemption"). 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502. This exemption covers employees of motor carries and private motor carriers engaged in the transportation of property in interstate commerce. *Id.* Kehe contends that both merchandisers and sales representatives are subject to the Motor Carrier Act exemption.

## 2. Washington State Overtime Requirements

Like the FLSA, the MWA generally requires employees to be paid one and a half times their regular rate of pay for all hours worked over 40 in a week. RCW 49.46.130(1); RCW 49.46.130(2)(a). Relevant to this case, the MWA recognizes an "outside sales" exemption to the overtime requirement similar to that of the FLSA. RCW 49.46.010(5)(c); WAC 296-128-540(1)-(2). This exemption provides:

The term "individual employed in the capacity of outside salesman" in RCW 49.46.010(5)(c) shall mean any employee:

(1) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business, as well as on the premises (where the employee regulates his own hours and the employer has no control over the total number of hours worked) in the following alternative activities:

(a) In making sales; including any sale, exchange, contract to sell, consignment for sale, shipment for sale or other disposition; or

(b) In obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; or

(c) In demonstrating products or equipment for sale; or

(d) In the sale of services and performance of the service sold when the compensation to the employee is computed on a commission basis; and

(2) Whose hours of work of a nature other than that described in (1)(a), (b), (c) and (d) of this section do not exceed 20 percent of the hours worked in the work week by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work; and

(3) Who is compensated by the employer on a guaranteed salary, commission or fee basis and who is advised of his status as "outside salesman."

WAC 296-129-540.  The key difference between the MWA and the FLSA is that the MWA outside sales exemption applies where the employee is "customarily and regularly" engaged in sales activity and no more than 20% of the employee's time is spent on nonexempt tasks, *id.*, while the FLSA outside sales exemption applies where the employee's "primary duty" is making outside sales, 29 C.F.R. § 541.500(a).  Kehe contends that the MWA outside sales exemption applies to sales representatives and to merchandisers during those periods of time when they are covering an absent sales representative's route.  As with the FLSA exemption, Kehe does not contend that the MWA outside sales exemption applies to merchandisers acting as merchandisers.

**B.      Nationwide Collective Action under 29 U.S.C. § 216(b)**

Plaintiffs seek to certify the following collective action pursuant to the FLSA:

> All full-time employees of Kehe Food Distributors, Inc. ("Kehe"), at any time between May 22, 2006 and the date of the order granting this motion, who worked as merchandisers and were paid on a salary basis or as sales representatives and 90% of whose income was derived from servicing Albertsons stores.

(Compl. (Dkt. # 1) ¶ 8.)  In other words, Plaintiffs seek a nationwide collective action comprised of (1) all Kehe sales representatives who focus on servicing Albertsons stores and (2) all Kehe merchandisers regardless of their location or of the stores serviced.  (*See* Mot. at 1.)  Plaintiffs claim that these employees were improperly deprived of overtime pay because they are not exempt from the FLSA's overtime requirements.  Kehe contends that these employees were not entitled to overtime pay because they are exempt under either the FLSA "outside sales" exemption or the Motor Carrier Act exemption.

1. Overview of FLSA Collective Actions

Under the FLSA, plaintiffs may institute a collective action on behalf of themselves and "other employees similarly situated" against an employer who violates the FLSA's overtime requirements. 29 U.S.C. § 216(b). In an FLSA collective action, any similarly situated employee must opt-in to the case following notice, whereas under Federal Rule of Civil Procedure 23, a class member who does not wish to be bound by the judgment must opt out of the case. *See id.*; Fed. R. Civ. P. 23. In addition, FLSA collective actions are not subject to the numerosity, commonality, and typicality rules of a class action suit brought under Rule 23.[6] Rather, the plaintiff need only show that she is "similarly situated" to the other members of the proposed class. 29 U.S.C. § 216(b); *see Morden v. T-Mobile USA, Inc.*, No. C05-2112RSM, 2006 WL 2620320, at *2 (W.D. Wash. Sept. 12, 2006). There is, however, little circuit law defining "similarly situated." *See Morden*, 2006 WL 2620320, at *2.

District courts apply a two-tiered approach to certification of a FLSA collective action. *See id.* (citing cases). First, the district court conducts an initial "notice stage" analysis of whether plaintiffs are similarly situated to the proposed class, and determines whether a collective action should be certified for the purpose of sending notice of the action to potential class members. *Id.* (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). "For conditional certification at this notice stage, the Court requires little more than substantial allegations, supported by declarations or

_____

[6] *See infra* Part IV.B.

discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Thiessen*, 267 F.3d at 1102).

The second stage generally occurs after the completion of discovery. *Id.* During this second stage, the court uses a stricter standard for determining whether the plaintiffs are "similarly situated." *Id.* (citing *Thiessen*, 267 F.3d at 1102). The second-stage analysis, however, is still "considerably less stringent than the requirement of Rule 23(b)(3) that common questions predominate." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). Rather, the court must review "several factors, including the specific employment conditions and duties of the individual plaintiffs, any defenses asserted by or available to the defendant which appear to be individual to each plaintiff, fairness and procedural considerations, and whether the plaintiffs made any required filings before instituting suit." *Morden*, 2006 WL 2620320, at *2 (citing *Thiessen*, 267 F.3d at 1103); *see also Morgan v. Family Dollar Stores*, 551 F.3d 1223, 1261-62 (11th Cir. 2008) (applying the *Thiessen* factors). Here, although there has been no first-stage conditional certification, the parties agree that the more stringent second-stage analysis is appropriate in light of the amount of discovery that was completed before Plaintiffs filed their motion. (*See* Resp. at 13; Reply at 7.)

2. Plaintiffs are "similarly situated" to the proposed class

Having reviewed the evidence in the record and the arguments of the parties, the court concludes that Plaintiffs have met their burden to show under a second-stage analysis that they are "similarly situated" to the proposed class members within the meaning of the FLSA.

*a.  The specific employment conditions and duties of the plaintiffs*

The first consideration in determining whether Plaintiffs are "similarly situated" to the proposed class is whether the Plaintiffs' specific employment conditions and duties are similar to those of the proposed class.  *See Morden*, 2006 WL 2620320, at *2 (citing *Thiessen*, 267 F.3d at 1103).  Here, as discussed above, the testimony of Kehe's own managers demonstrates that all merchandisers have the same or similar job duties; that all sales representatives servicing Albertsons stores have the same or similar job duties; and that Plaintiffs' job duties were typical of the duties of merchandisers and Albertsons sales representatives.  (*See* Leannais Dep. at 16, 81; DiPiero Dep. at 151-52 (agreeing that Ms. Cobb's duties were typical of sales representatives, and Ms. Troy's duties were typical of merchandisers).)  Further, Plaintiffs have put forth evidence that the duties of merchandisers and sales representatives servicing Albertsons substantially overlap: although each job role has responsibilities unique to it, both groups of employees are responsible for "merchandising activities" such as setting up shelves, resetting shelves, and stocking product according to the stores' planograms or schematics.  (*See supra* Part I.)  Further, when merchandisers cover sales representatives' routes, they are responsible for fulfilling largely the same duties as sales representatives.  (*See id.*)  The court therefore concludes that this factor favors a finding that Plaintiffs are similarly situated to the members of the proposed class.

*b.  Defenses asserted by or available to the defendant*

The second consideration in determining whether Plaintiffs are "similarly situated" to the proposed class is "any defenses asserted by or available to the defendant

which appear to be individual to each plaintiff." *Morden*, 2006 WL 2620320, at *2 (citing *Thiessen*, 267 F.3d at 1103). Kehe asserts that members of the proposed class are exempt from overtime under the FLSA's "outside sales" exemption and the Motor Carrier Act exemption and that Plaintiffs are not similarly situated because whether these exemptions apply depends on the individual employee's situation. The court disagrees.

First, with respect to the "outside sales" exemption, the evidence before the court demonstrates that Kehe sales representatives servicing Albertsons' stores work in an environment that is highly controlled at the Albertsons' national level, and where most of each employee's tasks are pre-defined.[7] (*See, e.g.*, Leannais Dep. at 20, 109, 154.) The court agrees with Plaintiffs' assertion that resolution of the case will likely turn on whether the various tasks assigned to the class members qualify as exempt or non-exempt, and whether, given these conclusions, the "primary duty" of Albertsons sales representatives and of merchandisers covering routes for sales representatives is making sales. *See* 29 C.F.R. § 541.500(a) (defining "outside salesman"); 29 C.F.R. § 541.700(a) ("Primary duty" is defined to mean "the principal, main, major, or most important duty that the employee performs.").

Second, with respect to the Motor Carrier Act exemption, it is undisputed that all of the purported class members, including Plaintiffs, used their own personal vehicles for transportation. Thus, whether the Motor Carrier Act exemption applies depends on the legal question of whether a class member who drives only his or her own personal

_____

[7] As noted above, Kehe concedes that the FLSA's "outside sales" exemption does not apply to merchandisers when they work as merchandisers.

ORDER- 14

vehicle and does not drive a commercial vehicle qualifies for the exemption. (*See* Pls.

Supp. Br. at 4-5 (quoting *Brooks v. Halsted Commc'ns Ltd.*, 620 F. Supp. 2d 192, 199 (D.

Mass. 2009) (holding that the majority view is that it would be "absurd" to have "one

vehicle over 10,000 pounds . . . vaccinate an employer from the obligation to pay FLSA

overtime to the entire body of its drivers.")).) Class members are thus similarly situated

with respect to the Motor Carrier Act exemption. The court therefore concludes that this

factor, too, favors a finding that Plaintiffs are similarly situated to the proposed class

members.

### c. Fairness and procedural considerations

The third consideration is "fairness and procedural considerations." *Morden*, 2006

WL 2620320, at *2 (citing *Thiessen*, 267 F.3d at 1103). Plaintiffs argue convincingly

that certifying the FLSA collective action would reduce the burden on the members of the

class by pooling their resources and would efficiently resolve common issues of law and

fact that arose from the allegedly illegal conduct. (Reply at 15 (citing *Morgan v. Family

Dollar Stores*, 551 F.3d 1223, 1265 (11th Cir. 2008).) Defendants make no argument

that a collective action would be unfair. The court therefore concludes that this factor,

too, favors a finding that Plaintiffs are similarly situated to the members of the proposed

class.

### d. Dukes *does not affect this result*

In its supplemental brief, Kehe argues that the principles set forth in *Wal-Mart Co.

v. Dukes*, --- U.S. ---, 131 S. Ct. 2541 (2011) preclude going forward with this case as a

collective action. (*See* Defs. Supp. Br. at 6.) The court is not convinced. First, courts

have made clear that the FLSA's "similarly situated" requirement is less demanding than the Rule 23 commonality requirement that was at issue in *Dukes*. *See Grayson*, 79 F.3d at 1096. Further, in the cases cited by Kehe in which district courts relied on *Dukes* to deny collective action certification, the individualized, discretionary decisions of individual supervisors were at issue. *See, e.g., MacGregor v. Farmers Ins. Exch.*, 2011 WL 2981466, at *3-4 (D.S.C. July 22, 2011) (discussing the plaintiffs' reliance on an "unwritten policy" regarding lunch breaks, and concluding that inquiries into individual supervisor decisions regarding each employee's requested, approved, and refused hours rendered the case inappropriate for collective treatment). Here, no such inquiry into individual supervisors' discretionary decisions is required. *Dukes* therefore does not support Kehe's argument for denying the motion for collective action certification.

In sum, because the *Thiessen* factors support the finding that Plaintiffs are similarly situated to the members of the proposed class within the meaning of 29 U.S.C. § 216(b), the court grants Plaintiffs' motion for certification of an FLSA collective action.

**C.  Washington Class Action under the MWA**

Plaintiffs seek to certify the following class to pursue their MWA claim:

> All full-time Washington-based employees of Kehe who worked as merchandisers or sales representatives at any time between May 22, 2006 and the date of this motion.

(Compl. ¶ 11.) Plaintiffs clarified at oral argument that during the operative time period, no Washington-based sales representatives serviced stores other than Albertsons.

A district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to

the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).  Certification is proper "only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

In addition to meeting the Rule 23(a) criteria, the party seeking certification must also fall into one of three categories in Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).  Here, Plaintiffs seek class certification under Rule 23(b)(3) on the basis that "common questions of law or fact common to class members predominate over individual questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (quoting *Falcon*, 457 U.S. at 160). "'The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* (quoting *Falcon*, 457 U.S. at 160).  If a court is not fully satisfied that the requirements of Rules 23(a) and

(b) have been met, certification should be refused. *Falcon*, 457 U.S. at 161. Even if the Rule 23 criteria are met, the court is given discretion over whether to certify a class. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

      1.  <u>Rule 23(a) Requirements</u>

         *a.  Numerosity*

Rule 23(a)(1) requires the court to find that the class is "so numerous that joinder of all of its members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold; rather, it "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC,* 446 U.S. 318, 330 (1980) (citing cases). *See Leyva v. Buley*, 125 F.R.D. 512, 516 (E.D. Wash. 1989) (joinder of 50 individual migrant workers as plaintiffs "would be extremely burdensome, especially in light of their alleged lack of sophistication, limited knowledge of the American legal system, limited or non-existent English skills, and geographic dispersion" throughout Washington, California, New York, and Mexico).

Plaintiffs contend that the proposed class contains, at a minimum, between 43 and 54 workers who were employed by Kehe as merchandisers and sales representatives in Washington during the class period. (*See* Berger Decl. ¶ 22 & Exs. 8-9 (class lists).) They further contend that joinder of all of the proposed class members would be impracticable due to the relatively small size of each individual's claims and the fact that the employees are dispersed throughout the state. Kehe counters that numerosity is not met because the proposed class combines two distinct types of employees (merchandisers

and sales representatives) into a single "manufactured" class. Kehe argues that there

should more properly a separate class for each type of employee, and that a merchandiser

class would not satisfy numerosity because only 10 merchandisers other than Ms. Troy

would satisfy the more limited merchandiser class definition. (*See* Berger Decl. Exs. 8-

9.) In response, Plaintiffs assert, as they did in their argument regarding FLSA

certification, that the duties of merchandisers and sales representatives are interrelated

and overlapping.

Based on Plaintiffs' evidence that the duties of merchandisers and Albertsons sales

representatives are interrelated and overlapping (*see supra* Part I & Part II(B)(2)(a)), the

court is satisfied that the two positions may be combined into a single class.

Accordingly, Plaintiffs have met their burden to demonstrate numerosity.

*b. Commonality*

Rule 23(a)(2) requires the court to find that "there are questions of law or fact

common to the class." Fed. R. Civ. P 23(a)(2). The Supreme Court has clarified that

commonality requires the plaintiff to demonstrate that the class members 'have suffered

the same injury.'" *Dukes*, 131 S. Ct. at 2551. The class members' "claims must depend

upon a common contention . . . . That common contention, moreover, must be of such a

nature that it is capable of classwide resolution—which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims

in one stroke." *Id.*

> What matters to class certification . . . is not the raising of common
> "questions"—even in droves—but, rather the capacity of a classwide
> proceeding to generate common answers apt to drive the resolution of the

litigation.   Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).

In their complaint and in their briefing, Plaintiffs have identified a number of factual and legal questions that are common to the class, including:

- whether the tasks that performed by Washington sales representatives and by merchandisers when covering a sales representative's route constitute "making sales" within the meaning of WAC 296-129-540;

- whether the duties of merchandisers and of sales representatives servicing Albertsons stores fall within the outside sales exemption under WAC 296-128-540(2);

- whether Kehe's failure to pay class members overtime was willful for purposes of exemplary damages under the MWA;

- whether Rule 23 class members may obtain exemplary damages under the MWA in addition to liquidated damages as collective action members under the FLSA; and

- whether the MWA applies to hours worked by Washington merchandisers and sales representatives in other states.

Plaintiffs also point out all of the class members complain of the same injury—deprivation of overtime pay—and that Kehe has admitted that all merchandisers in Washington state have the same job duties, as do all sales representatives servicing Albertsons stores in Washington state.  (*See* Mot. at 13; Leannais Dep. at 16, 81.)

The court concludes that Plaintiffs have met their burden to demonstrate commonality.  First, with respect to the first two questions listed above, Plaintiffs have put forth evidence in the form of testimony from Kehe's Rule 30(b)(6) deponents that the

duties of all merchandisers within the state of Washington and all sales representatives

servicing Albertsons stores are substantially the same, and that Kehe's job descriptions

for the positions accurately describe the duties of merchandisers and sales

representatives. (*See* Leannais Dep. at 16, 81; Leannais Decl. ¶ 7.) Thus, the questions

of whether the tasks assigned to these employees constitute "making sales," whether

these employees are "customarily and regularly" engaged in sales activity, and whether

less than 20% of the employees' time is spent on nonexempt tasks may be subject to

common resolution based on the testimony of Kehe managers and the documents in the

record. *See* WAC 296-129-540; *see also Miller v. Farmer Bros. Co.*, 150 P.3d 598, 602-

03 (Wash. Ct. App. 2007) (holding that "making sales" within the meaning of the

MWA's outside sales exemption "involves creating the sale—that is, persuading a

customer to buy a product he has not already consented to buy," and that restocking

prearranged quantities of product does not qualify as "making sales"). As Plaintiffs point

out, Kehe has thus far directed the court to no evidence showing that any Washington

merchandiser or sales representative has qualified for the MWA's outside sales

exemption.

With respect to the third question, the Washington Supreme Court has held that

whether a failure to pay overtime was willful depends on a determination that the

employer "knows what he is doing, intends to do what he is doing, and is a free agent."

*Schilling v. Radio Holdings, Inc.*, 961 P.2d 371 (Wash. 1998). The resolution of this

question does not require an individualized inquiry into each employee's situation.

Rather, whether Kehe knew that it did not pay overtime to its sales representatives and

merchandisers and whether it intended not to pay overtime may be subject to resolution on a classwide basis.  Similarly, Plaintiffs' fourth question, whether Plaintiffs may obtain exemplary damages for willful withholding of wages under chapter 49.52 RCW in addition to liquidated damages under the FLSA collective action, is a legal question subject to a common classwide answer.

Finally, Kehe raises the question whether the MWA applies to hours worked outside of Washington.  Kehe argues that application of the MWA to time worked by merchandisers outside of Washington would impose an excessive burden on interstate commerce in violation of the Commerce Clause of the United States Constitution.  This is also a question of law subject to common resolution across the class:  the court must decide only once whether the application of the MWA to time worked outside of Washington does or does not violate the Commerce Clause.

Further, the court agrees with Plaintiffs that the *Dukes* case does not affect the outcome here.  The Supreme Court's holding that the *Dukes* plaintiffs did not satisfy commonality was based on its determination that the resolution of the employment discrimination claims depended on "literally millions of employment decisions at once"—decisions that had been entrusted to the discretion of the employees' supervisors. *See Dukes*, 131 S. Ct. at 2552.  Thus, the trial court would have been required to review the subjective intent behind those millions of employment decisions in order to determine whether there was gender-based discrimination against the members of the class. *Id.* Here, by contrast, the issue is whether Washington employees working as merchandisers or as sales representatives were properly classified as exempt under the MWA.

Discretionary decisions by individual supervisors are not at issue, and it appears that no employee-by-employee analysis of the reasons for Kehe's classification of its employees is necessary to resolve this question. For these reasons, the court concludes that Plaintiffs have met their burden to demonstrate that there are there are questions of law or fact common to the class as required by Rule 23(a)(2).

### c. *Typicality*

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted). Individual defenses applicable to the proposed class representative do not preclude a finding of typicality unless there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it. *Id.*

Plaintiffs contend that they satisfy typicality because Kehe has admitted that the named plaintiffs had job duties and claims that were typical of the merchandisers and sales representatives in the putative class. (*See* Mot. at 13 (citing DiPiero Dep. at 151-52.) Plaintiffs further contend that they suffered the same injury as all other class members because it is undisputed that, like all other proposed class members, they were

classified as exempt and not paid overtime.  (*Id.*)  The court agrees that Plaintiffs have satisfied their burden to show that their claims and injuries are typical of the class they seek to represent.

Kehe relies primarily on credibility issues in challenging Plaintiffs' typicality. First, Kehe points to a sworn statement made by Ms. Cobb in a workers' compensation proceeding in which she stated that she worked eight hours per day, five days per week. (Hollingsworth Decl. (Dkt. # 101) Ex. D ("Cobb Dep.") at 25-27 & Ex. 4.)  Thus, according to Kehe, Ms. Cobb has sworn under oath that she did not work overtime, and she therefore lacks standing to act as class representative because she did not suffer the injury—deprivation of overtime pay— for which she seeks to represent the putative class. Further, according to Kehe, because Ms. Cobb's later statements contradict her sworn statement, individual credibility problems arise which render her "atypical."  (Cobb Dep. 21-22 (stating she worked 14-16 hour days early in her employment and could not estimate the number of hours she typically worked thereafter).)  To counter Kehe's argument, Ms. Cobb submitted a declaration in which she explains the context for her statement that she worked eight hours per day, five days per week.  (2d Cobb Decl. (Dkt. # 116) ¶¶ 3-5.)  Specifically, Ms. Cobb states that she wrote the statement to indicate that she was a full-time employee, because she believed that whether she worked full time was the necessary information in the context of a worker's compensation claim, rather than the actual hours worked.  (*See id.*)  The court concludes, in light of Ms. Cobb's declaration, that Ms. Cobb's worker's compensation statement and deposition testimony

are not so contradictory as to raise issues regarding standing and credibility that would make Ms. Cobb atypical of the proposed class.

Similarly, Kehe contends that credibility issues defeat a finding that Ms. Troy is typical of the class because Ms. Troy once stated that the job of a sales representative is to "sell, sell, sell" but later testified that she never sold products and that her job was to stock store shelves and order new products. (Resp. at 25 (citing Hollingsworth Decl. Ex. B).) Ms. Troy explains that she made the "sell, sell, sell" statement on a self-evaluation that she wrote in 2008 when she was promoting herself for a supervisory or lead position, and that she was emphasizing prior sales experiences she had gained in working for other food distributors. (2d Troy Decl. (Dkt. # 117) ¶¶ 4-8.) The court concludes, in light of Ms. Troy's declaration, that the 2008 self-evaluation statement does not raise credibility issues that would make her atypical of the proposed class.

*d. Adequacy*

Rule 23(a)(4) requires Plaintiffs to demonstrate that they will fairly and adequately protect the interests of their class. Fed. R. Civ. P. 23(a)(4). In determining whether Plaintiffs will be adequate class representatives, the court must consider whether they have "any conflicts of interest with other class members" and whether they will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Plaintiffs argue that they have no interests that conflict with other class members, that they seek to enforce statutory rights guaranteed to all class members, that they will prosecute the action vigorously on behalf of the class, and that there is nothing in their backgrounds that will interfere with their ability to prosecute the case. (*See* Mot. at 14.)

Kehe raises no challenges to Plaintiffs' adequacy, other than the potential credibility issues addressed in the typicality discussion above. The court concludes that Ms. Troy and Ms. Cobb are adequate class representatives.

Neither party expressly addresses adequacy of counsel in its briefing. Plaintiffs did, however, submit a declaration setting forth their attorneys' qualifications, including their experience with similar class actions and collective actions. (*See* Berger Decl (Dkt. # 90) ¶¶ 1-5.) Kehe does not challenge counsel's adequacy. The court concludes that Mr. Berger and Mr. Garfinkel are adequate and qualified to represent the class in this matter.

In sum, the court concludes that Plaintiffs have met their burden to demonstrate that they have satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

2. <u>Rule 23(b)(3) Requirements</u>

Under Rule 23(b)(3), a court may certify a class if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both the predominance and superiority requirements were added to the Federal Rules "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R.

Civ. P. 23(b)(3), Adv. Comm. Notes to 1966 Amendment).  The predominance and

superiority requirements are "far more demanding" than Rule 23(a)(2)'s commonality

requirement.  *Id.* at 624.

       *a.  Predominance*

      Predominance "tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  "[T]he main concern

in the predominance inquiry . . . [is] the balance between individual and common issues."

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 956 (9th Cir. 2009).

In the context of a wage-and-hour class action brought under California law, the Ninth

Circuit has held that it is an abuse of discretion to rely heavily on an employer's internal

policy of treating all employees uniformly with respect to exemptions to the exclusion of

other factors relevant to the predominance inquiry.  *Id.* at 959.

      As discussed above, Plaintiffs have demonstrated that there are multiple common

issues that are amenable to classwide determination in this matter.  (*See supra* Part

II(C)(1)(b).)  Kehe contends, however, that there remain numerous individualized issues

that predominate over the classwide questions, making class certification inappropriate.

In particular, Kehe contends that whether the MWA's outside sales exemption applies to

an individual full-time sales representative or a merchandiser covering for a sales

representative depends on an individualized review of how each employee spends each

day.  Plaintiffs disagree, explaining that whether Kehe has met its burden to show that the

exemption applies to sales representatives and merchandiser can be determined on a

classwide basis.  *See Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 587 (Wash.

1    2000) (holding that the employer has the burden of proving exempt status). As discussed

2    above in its discussion of commonality (*see supra* Part II(C)(1)(b)) the court agrees with

3    Plaintiffs that whether the tasks assigned to merchandisers and sales representatives

4    constitute "making sales," whether these employees are "customarily and regularly"

5    engaged in sales activity, and whether less than 20% of the employees' time is spent on

6    nonexempt tasks may be subject to common resolution based on the testimony of Kehe

7    managers and the documents in the record.

8        In addition, Kehe argues in its supplemental brief that *Dukes* "overturns Ninth

9    Circuit precedent by prohibiting certification of class claims that require damages to be

10    calculated by formula." (Def. Supp. Br. at 7 (citing *Dukes*, 131 S.Ct. at 2561).)

11    Plaintiffs, for their part, rely on the Ninth Circuit's observation, in a post-*Dukes* decision,

12    that "the mere fact that there might be differences in damage calculations is not sufficient

13    to defeat class certification" and that "[t]he amount of damages is invariably an

14    individual question and does not defeat class action treatment." *Stearns v. Ticketmaster*,

15    --- F.3d ---, 2011 WL 3659354, at *10 (9th Cir. Aug. 22, 2011) (citing *Yokoyama*, 594

16    F.3d at 1094).

17        The discussion in *Dukes* upon which Kehe relies is not on point. Rather, the cited

18    pages deal with the propriety of certifying a class pursuant to Rule 23(b)(2) where the

19    class seeks backpay as a remedy for discrimination under Title VII. *See Dukes*, 131 U.S.

20    at 2557-61. Noting that Rule 23(b)(2) "applies only when a single injunction or

21    declaratory judgment would provide relief to each member of the class," the Court stated

22    that the rule "does not authorize class certification when each class member would be

entitled to an individualized award of monetary damages." *Id.* at 2557. The Court

explained that this is so because the "procedural protections attending the (b)(3) class—

predominance, superiority, mandatory notice, and the right to opt-out—are missing from

(b)(2)" because predominance and superiority are "self-evident" when a class seeks an

"indivisible injunction benefiting all its members at once." *Id.* at 2558. In contrast,

according to the Court, predominance and superiority are not self-evident with respect to

each class member's claim for money, and "depriving people of the right to sue" by

approving a mandatory class absent notice and opt-out rights would violate due process.

*Id.* at 2559. The plaintiffs in *Dukes* argued that Rule 23(b)(2) could, nevertheless, allow

certification where they sought monetary relief that was "incidental" to the requested

injunctive or declaratory relief. *Id.* at 2560. The Court, however, disagreed, holding that

the plaintiffs could not satisfy the requirements of both Rule 23(b)(2) and due process.

*Id.* Observing that Wal-Mart was "entitled to individualized determinations of each

employee's eligibility for backpay," the Court concluded that it was inappropriate to

determine the entire class recovery based on a sample of class members. *Id.* at 2561.

Rather, the Supreme Court held that because Wal-Mart is entitled under Title VII's

remedial scheme to litigate its statutory defenses to individual claims, such litigation

would necessarily prevent backpay from being merely "incidental" to the classwide

injunction, and a Rule 23(b)(2) class could not be certified even if "incidental" monetary

relief could be awarded to such a class. *Id.* Thus, *Dukes* does not, contrary to Kehe's

assertion, prevent Plaintiffs from seeking certification of a Rule 23(b)(3) class—as

opposed to a Rule 23(b)(2) class—where the amount of damages for each class member

may depend on an individualized analysis.

Nevertheless, even assuming that individualized questions will arise in

determining damages for the members of the class, the court concludes that the multiple

common questions discussed above—such as whether the MWA exemption applies,

whether the MWA applies to hours worked out-of-state, and whether Plaintiffs are

entitled to exemplary damages for willful withholding of wages—predominate over the

individualized question of damages, which the Ninth Circuit acknowledges is insufficient

to defeat class certification. *See Stearns,* 2011 WL 3659354, at \*10. Further, in

conducting this balancing, the court does not rely solely on Kehe's policy of uniformly

classifying merchandisers and sales representatives as exempt employees. *See In Wells

Fargo*, 571 F.3d at 959. Rather, in light of Kehe's executives' testimony that

merchandisers and Albertsons sales representatives' job duties and responsibilities are

consistent and subject to centralized control, the court's determination that common

issues predominate over individual considerations does not run afoul of *In re Wells Fargo*

or *Vinole v. Countrywide Home Loans, Inc.*, 517 F.3d 935, 946 (9th Cir. 2009)

(discussing with approval decisions by district courts which "acknowledged the

employer's uniform application of an exemption to employees, but focused on whether

the employer exercised some level of centralized control in the form of standardized

hierarchy, standardized corporate policies and procedures governing employees, uniform

training programs, and other factors susceptible to common proof."). Therefore, the court

1    concludes that Plaintiffs have met their burden to satisfy Rule 23(b)(3)'s predominance

2    requirement.

3         *b. Superiority*

4        Plaintiffs also bear the burden under Rule 23(b)(3) to demonstrate that a class

5    action is superior to other available methods for fairly and efficiently adjudicating the

6    controversy. Fed. R. Civ. P. 23(b)(3). First, Plaintiffs argue that a class action is superior

7    due to the relatively modest size of the individual claims, which would make it unlikely

8    that individual class members would bring suit. Further, Plaintiffs point out that many of

9    the class members still work for Kehe, making it unlikely that they would sue their

10    current employer. Second, Plaintiffs point out that adjudicating a single action would be

11    much more efficient than burdening the court with approximately 60 individual actions.

12    Third, Plaintiffs explain that the case will be manageable because they will prove liability

13    in this case principally by using representative evidence and the testimony of Kehe's own

14    managers. Finally, Plaintiffs point to the multiple MWA class actions that Plaintiffs'

15    counsel have tried over the past few years to demonstrate that they are experienced in

16    handling this type of case. (*See* Mot. at 18.)

17        Kehe counters, first, that the class action is not superior because each class

18    member must litigate "numerous and substantial separate issues to establish his or her

19    right to recover individually." (Resp. at 28 (quoting *Jimenez v. Domino's Pizza, Inc.*, 238

20    F.R.D. 241, 253 (C.D. Cal. 2006).) This argument is unavailing. As discussed above,

21    this case is more appropriately characterized as one involving numerous common,

22    classwide questions that predominate over the individual issues.

1    Kehe further argues that a class action is not superior because the Washington

2 State Department of Labor and Industries maintains an administrative process for

3 resolving the overtime claims of individual employees.  As Plaintiffs point out, however,

4 the availability of an administrative process does not foreclose class relief.  The court

5 concludes, therefore, that Plaintiffs have met their burden to demonstrate that a class

6 action is a superior means of resolving the controversy.

7    In sum, because Plaintiffs have met their burdens under both Rule 23(a) and Rule

8 23(b)(3), the court grants Plaintiffs' motion to certify the MWA class pursuant to Rule

9 23.[8]

10                        **III.    CONCLUSION**

11    For the foregoing reasons, the court GRANTS Plaintiffs' combined motion for

12 collective action certification and class certification (Dkt. # 62).  The court ORDERS as

13 follows:

14    (1)  The court GRANTS Plaintiffs' motion for certification as a collective action

15 under the FLSA;

16    (2)  The court GRANTS Plaintiffs' motion for class certification of Plaintiffs'

17 state-law claims pursuant to Rule 23(b)(3);

18    _____

19    [8] In a footnote, Kehe questions the propriety of certifying both an FLSA collective action
and an MWA class. The Ninth Circuit has not ruled on whether a Rule 23 class action can
coexist with a related collective action under the FLSA.  *See Pitts v. Terrible Herbst, Inc.*, ---

20 F.3d ---, 2011 WL 3449473, at *9 (9th Cir. 2011) (acknowledging that district courts in this
circuit are divided, but declining to decide the question because the plaintiff had abandoned his

21 FLSA claims).  The only circuit court to address the question, however, has held that the two are
compatible.  *See id.* n.6 (noting that the only circuit to address the issue held that "Rule 23 class

22 actions and FLSA collective actions may peacefully co-exist") (citing *Ervin v. OS Rest. Servs.*,
632 F.3d 971, 976-79 (7th Cir. 2011)).

1    (3)  The court APPOINTS Adam Berger and Martin Garfinkel of the law firm

2  Schroeter Goldmark and Bender as class counsel; and APPOINTS Plaintiffs Rosemary

3  Troy and Mikki Cobb as class representatives; and

4    (4)  The court ORDERS the parties to contact the court within 10 days of the

5  court's ruling on this motion to schedule a status conference.  Prior to this conference,

6  counsel shall file (1) a proposed form of class notice; and (2) a joint status report

7  containing a proposed case schedule, commencing with dispositive motions.  Further,

8  counsel should be prepared at this conference to discuss their stipulation and proposed

9  order regarding bifurcation of liability and damages issues for trial (Dkt. # 57).

10    Dated this 26th day of September, 2011.

11

12

13  _____

14  JAMES L. ROBART
     United States District Judge

15

16

17

18

19

20

21

22

ORDER- 33